**INTERNATIONAL PAPER COMPANY and Consolidated Subsidiaries, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–119T.**

United States Court of Federal Claims.

Aug. 14, 1996.

---

Dennis P. Bedell, Washington, DC, attorney of record, for plaintiff.

William C. Rapp, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## ORDER

REGINALD W. GIBSON, Senior Judge:

## I. INTRODUCTION

This discovery dispute raises the following related issues—(i) whether or not plaintiff should be required to provide discovery (in the form of responses to defendant's requests for admission and through the production of documents) concerning the amount of the casualty loss sustained by plaintiff-taxpayer to its timber resources as a consequence of a 1979 hurricane; and (ii) whether or not defendant should be precluded from raising a factual dispute relative to said casualty loss amount. These issues are presented to the court by twin motions, now before the court. First, the court has before it plaintiff's mo-

tion for a protective order, filed June 3, 1996, in which plaintiff seeks an order protecting it from the disputed discovery and prohibiting defendant from raising any factual dispute concerning the amount of its casualty loss (*i.e.*, the volumes and fair market values of the timber damaged or destroyed by the hurricane). Second, the court also has before it defendant's motion to compel the contested discovery, filed July 11, 1996, wherein defendant requests an order compelling plaintiff to answer its requests for admission and to produce the documents requested in its fourth set of requests for production of documents.

Clearly, these two motions simply represent obverse sides of the same fundamental question—is defendant entitled to the requested discovery? Resolution of this question and its related sub-issues will resolve both motions. As detailed below, we find that defendant is entitled to pursue discovery relative to the amount of the casualty loss sustained by plaintiff in 1979. Accordingly, the court denies plaintiff's motion for a protective order and grants defendant's motion to compel discovery.

## II. BACKGROUND

International Paper Company is a New York corporation and the common parent of an affiliated group of corporations (collectively "IP" or "plaintiff") engaged in two primary businesses: (i) growing and managing timber; and (ii) manufacturing paper and other wood products. On February 6, 1990, IP filed a complaint in this court, seeking a refund of federal income taxes, premised on nine substantive grounds or "issues." This discovery dispute relates to one such issue, identified by the parties as "the Hurricane Frederic Casualty Loss Issue."

In September 1979, Hurricane Frederic struck the Gulf Coast, allegedly damaging or destroying certain interests in timber owned by plaintiff in Alabama and Mississippi. As a result thereof, IP claimed a casualty loss deduction for the tax year 1978, in accordance with Rev.Rul. 79–426, 1979–2 Cum.Bul. 85 (allowing a casualty loss deduction to be taken in the year preceding the casualty event for losses caused by, *inter alia*, Hurri-

cane Frederic). According to the complaint, plaintiff allegedly subdivided its timber interests into depletion blocks for federal income tax purposes. IP avers that it sustained approximately $26 million in property damage to its timber, in the alleged affected depletion blocks, from the hurricane. IP further alleges that it erroneously claimed a deduction of roughly $4.5 million; and that the correct deductible amount should have been roughly $24.5 million, *i.e.*, its adjusted basis in the affected depletion blocks. *See* I.R.C. § 165; Tres.Reg. § 1.165–7(b)(1) (limiting taxpayers casualty loss deduction to the adjusted basis in the affected property).

In 1988, after an Internal Revenue Service (IRS) audit and administrative appeal, IP and the IRS jointly executed a Form 870–AD,[1] settling plaintiff's tax liabilities for 1972 through 1979 and reflecting an overassessment of $582,200 for 1978. However, the Form 870–AD expressly reserved IP's right to file refund claims with respect to nine issues, including the Hurricane Frederic Casualty Loss Issue. On June 21, 1989, IP filed eight administrative refund claims (one for each of the years 1972–1979) based on the aforementioned nine issues. These claims were subsequently denied in full by the Commissioner on January 10, 1990. Shortly thereafter, as previously noted, IP filed its complaint in this court on February 6, 1990.

Discovery in this case was closed on March 1, 1992, by order of the court, dated December 20, 1991. However, in light of this court's decision in *Weyerhaeuser Co. v. United States*, 32 Fed.Cl. 80 (1994) (holding that the single, identifiable property for casualty loss purposes was dependent on the facts and circumstances of any given case), *aff'd in part, rev'd in part and remanded*, 92 F.3d 1148 (Fed.Cir.1996) (reversing the lower court's determination of the SIP), the parties agreed to seek to reopen discovery on the Hurricane Frederic Casualty Loss Issue. On September 11, 1995, this court ordered that "[t]he parties may engage in voluntary discovery regarding the Hurricane Casualty Loss Issue ... to the extent that both par-

ties agree that the factual inquiry is reasonable and not unduly burdensome."

On or about May 24, 1996, the government tendered to plaintiff defendant's fourth set of document requests and first set of requests for admission, seeking the damage assessment plan, tally sheets, and timber salvage records used by IP in quantifying its casualty loss or, at least, an admission by IP that such documents are irretrievably lost. Thereafter, on June 3, 1996, plaintiff filed the instant motion for a protective order. The government then filed its motion to determine the sufficiency of plaintiff's objections to defendant's requests for admission and to compel discovery on July 11, 1996. These twin motions have been fully briefed, and oral argument was heard thereon on July 22, 1996. Accordingly, we now turn to address the subject motions.

## III. CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

IP contends that defendant's requested discovery is unreasonable and unduly burdensome for three reasons. First, plaintiff asserts that defendant has previously judicially admitted the volumes and fair market values of its damaged and destroyed timber. This assertion is premised on plaintiff's interpretation of certain of the government's admissions obtained in response to plaintiff's requests for admission. As such, IP maintains that the quantum of its casualty loss is conclusively established and that, accordingly, further factual development of this issue is irrelevant and impermissible.

Second, IP alleges that the volumes and fair market values of the damaged and destroyed timber were established and agreed upon at the administrative level, before the IRS. After an extensive audit, the IRS accepted the amount of the casualty loss, avers plaintiff. Moreover, plaintiff notes, the IRS and IP jointly executed a Form 870–AD, wherein, contends plaintiff, the IRS allowed

---

**1.** "IRS Form 870–AD (appellate division), entitled 'Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Overassessment,' is the general purpose form which the IRS uses to register and memorialize settlement negotiations." *Kretchmar v. United States*, 9 Cl.Ct. 191, 192 n. 2 (1985).

it a casualty loss deduction premised on the established volumes and fair market values. Thus, IP asserts that the acceptance by the IRS of the volumes and fair market values constitutes a determination by the Commissioner that is entitled to a presumption of correctness, as a matter of law. Moreover, plaintiff charges that the IRS·continued to agree with plaintiff's figures and that defense counsel may not take a position contrary to his client.

Finally, plaintiff avers that it has never agreed to provide the disputed discovery and that discovery has been closed in this case for some time. Furthermore, contends plaintiff, discovery was only reopened on a limited, voluntary basis. If the government is allowed to pursue this discovery and to dispute the amount of the casualty loss, IP represents that it will be seriously prejudiced by the time and expense necessary to prepare and present evidence on a factual issue that it regards as settled. In IP's view, the sole issue for trial is—what is the single, identifiable property for purpose of determining the casualty loss and the adjusted basis limitation? Thus, IP prays for a protective order precluding the government from raising other issues at trial.

### B. *Defendant*

In response, the government counters that it has not judicially admitted the substantive correctness of the volumes and fair market values in question, but only that certain verifiable events occurred at the administrative level. Moreover, observes defendant, at least one of the admissions relates to a method of calculating casualty losses, used prior to the Court of Claims' decision in *Westvaco Corp. v. United States*, 639 F.2d 700 (Ct.Cl. 1980), that is no longer valid. Defendant concludes on this point by arguing that, to the extent that plaintiff's requests for admission are ambiguous, they must be construed against the drafter, IP.

Next, the government contends that any reliance on any so-called agreement at the administrative level is unreasonable. A tax refund suit in this court is a *de novo* proceeding in which plaintiff bears the burden of proof as to all of the elements of its claim,

maintains defendant. Accordingly, the government asserts that plaintiff is required to prove the amount of its casualty loss and that defendant is entitled to discover any information in the possession of IP on this issue.

Lastly, defendant argues that IP has agreed to the discovery sought by the government both in a status report and at a status conference. The government vigorously contends that it needs the information it has sought through discovery in order to evaluate the damage assessment methodology used by IP in quantifying its casualty loss. Accordingly, defendant asks that the court order plaintiff to provide the requested discovery.

## IV. DISCUSSION

In considering the motions now before the court, and the positions of the parties, we are mindful of the fact that a party moving for a protective order (at bar, plaintiff) bears the burden of showing "good cause" in support of such motion "to protect a party or person from ... undue burden or expense." RCFC 26(c). Moreover, we are similarly mindful of the generally broad scope of discovery in this court, within which the "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." RCFC 26(b). However, the court will not allow discovery that is "unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, the limitations on the parties' resources, and the importance of the issues at stake in the litigation." RCFC 26(b)(iii). In addition, discovery will be limited where "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought...." RCFC 26(b)(ii). With these principles firmly in mind, we now proceed to examine the competing contentions of the parties.

### A. *Defendant's Responses to Plaintiff's Requests for Admission*

■ We begin by considering defendant's admissions, secured in response to plaintiff's requests for admission, which plaintiff contends constitute judicial admissions on the

part of the government of the volumes and fair market values (FMVs) of the damaged timber. Specifically, IP points to defendant's admission of the following statements:

> 285. The Internal Revenue Service audited and accepted both the estimates of timber damaged by Hurricane Frederic and the fair market values detailed in Exhibit 23–W[, listing volumes of damaged timber, fair market values per unit, and fair market values for different types of timber in each of IP's depletion blocks].

> 286. Both the Internal Revenue Service and International agree that the per unit fair market value of timber damaged or destroyed by Hurricane Frederic was in excess of its appropriate depletion rate.

> 287. Both the Internal Revenue Service and International agree that taking into account the IRS audit adjustments, International realized the following damage from Hurricane Frederic: [list of dollar values for each depletion block omitted.]

Because we disagree with plaintiff's strained interpretation of these admissions, we hold that they do not foreclose further factual development respecting the amount of the casualty loss suffered by IP, even though they may be judicial admissions.

 A judicial admission is a "formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true." *Weyerhaeuser*, 32 Fed.Cl. at 118 (quoting *Hofer v. Bituminous Casualty Corp.*, 260 Iowa 81, 148 N.W.2d 485, 486 (1967)). Furthermore, a judicial admission is "conclusively binding" and is, therefore, beyond the power of evidence to controvert. *Id.* Clearly, the government's admissions made in response to a discovery request are formal acts, done in the course of judicial proceedings, conceding the truth of the propositions laid out above. However, the parties disagree over the content of the propositions. Plaintiff attempts to give these requests for admission a construction broader than their plain and unambiguous terms will admit, contending that

they conclusively establish the truth of the volumes and FMVs of damaged timber set forth therein.

Each of the three statements admitted by the government to be true speaks of the IRS and not "defendant," the "government," or "the United States." None of the statements purports to affirm the truth or accuracy of the underlying volumes or fair market values. Rather, all that defendant has facially admitted is that the *IRS* "audited and accepted" and "agrees" with the figures detailed in the requests for admission. While this fact may or may not be significant, it is not the same thing as an admission that IP's volumes and FMVs are in fact correct. Quite simply, the admitted propositions do not say what IP contends that they say.

Request for admission 285, which states that the IRS "audited and accepted" IP's figures, obviously relates to what occurred at the audit level before the IRS. And, requests 286 and 287 again relate to a verifiable occurrence at the administrative level, *i.e.*, before the IRS. The fact that these latter two statements are worded in the present tense cannot change the fact that they expressly address the administrative level through the use of the term "Internal Revenue Service." Moreover, plaintiff drafted two *proposed* stipulations of fact, *never assented to by the government,* which unequivocally stated that "the parties agree" with the estimates of timber damage put forth by IP. This shows that plaintiff knew full well how to unambiguously elicit an admission of the substantive correctness of the volumes and fair market values of damaged timber. That IP chose not to do so in its requests for admission weighs conspicuously against plaintiff's asserted interpretation of said requests.

 Furthermore, even if the court were less than certain as to the proper interpretation of these requests for admission, we would be required to construe any ambiguity therein against IP, the drafter of these requests, under the well-established principle of *contra proferentum*.[2] Assuming, *arguen-*

---

2. "[A]n ambiguous provision is construed most

strongly against the person who selected the lan-

*do,* that plaintiff's requests for admission are unclear on whether they relate solely to the administrative level or whether they establish the substantive correctness of the volumes and FMVs of damaged timber, the requests should be construed against the drafter. *See Talley v. United States,* 990 F.2d 695, 699 (1st Cir.1993); *Ortho Diagnostic Sys. Inc. v. Miles Inc.,* 865 F.Supp. 1073, 1079 (S.D.N.Y.1994). In this light, the court would interpret the admitted propositions as narrowly addressing what transpired at the administrative level, before the IRS.

■ Finally, we observe that plaintiff's proposed construction of the admitted statements is in tension with established precedent. First, as explained in *Weyerhaeuser,* identification of *the* single, identifiable property (SIP) is the *first* step in determining the amount of a casualty loss. 32 Fed.Cl. at 109. Only after the SIP has been identified can the fair market value of the SIP be determined, both immediately before and after the casualty event. IP's attempt to conclusively establish the amount of its loss *prior* to ascertaining the SIP, which plaintiff concedes is an open issue, is thus somewhat backwards. Apparently, plaintiff seeks to extrapolate from per unit FMVs, multiplying that figure by the number of units determined to have been lost in each SIP, once identified. However, the Court of Claims, in *Westvaco Corp. v. United States,* 639 F.2d 700 (Ct.Cl. 1980), counselled against such an approach.

In *Westvaco,* the court held that, because of its holding that the SIP was the depletion block, "an aggregation of the value of destroyed units of merchantable timber, together with the value of partial losses resulting from nonfatal injuries to merchantable trees, does not necessarily measure the reduction in fair market value of the property." *Id.* at 707. This was due to the fact that other intangible factors might possibly affect the FMV of the SIP, without affecting the per unit FMV of timber, *"e.g.,* changes in access to and changes in density, changes in supply

and demand, and possible offsetting benefits such as pine release." [3] *Id.* For this reason, the court remanded the case to the trial judge to determine "the difference in fair market value of each of the various affected management districts immediately before and immediately after the respective casualties," *id.* at 721, even though, in that case, "[t]he parties [had] agree[d] on the volume of timber destroyed, and on the fair market value of the merchantable units represented by the destroyed timber," *id.* at 703, just as IP contends has been done in this case.

Not only does the foregoing analysis persuade the court that it is highly unlikely that the parties intended the requested admissions to bear the meaning that plaintiff would ascribe to them, even if the admissions related to the substantive correctness of the volumes and FMVs, said admissions would not necessarily correspond to the amount of the casualty loss sustained by IP. Accordingly, even if plaintiff was correct concerning the interpretation of the requested admissions, the amount of the casualty loss (*i.e.,* the reduction in FMV) would not be conclusively established.

For all of the foregoing reasons, then, the court holds that the requested admissions relate exclusively and only to what evolved at the administrative level, before the IRS, and not to the underlying accuracy of the volumes and FMVs delineated therein. Therefore, we turn next to examine the significance of the events that occurred before the IRS.

B. *Actions of the IRS Re: the Volumes and FMVs of IP's Damaged and Destroyed Timber*

1. *Audit & Determination of the Commissioner*

■ Plaintiff avers that the IRS accepted IP's volumes and FMVs of damaged timber after an extensive audit. As such, contends plaintiff, the Commissioner's determination on this factual issue is entitled to a

---

guage." *Black's Law Dictionary* 296 (5th Ed.1979) (citing *United States v. Seckinger,* 397 U.S. 203, 216, 90 S.Ct. 880, 887–88, 25 L.Ed.2d 224 (1970)).

**3.** The Court of Claims defined "pine release" as "the elimination or reduction of vegetative material, usually woody plants and trees, that interfere with the growth of pine trees being managed." *Westvaco,* 639 F.2d at 703 n. 5.

presumption of correctness. The court cannot agree with plaintiff's argument. While it is certainly true that the determination of the Commissioner is entitled to a presumption of correctness, that presumption attaches only to the determination of the tax liability (*i.e.,* the assessment), giving rise to the taxpayer's burden of proving (*i.e.,* producing evidence sufficient to show) that it is entitled to a refund of taxes paid.

Moreover, while "[t]his presumption may appear to give evidential weight to the Service's action, ... this is not the case." *IRS Practice and Procedure* ¶ 1.05[2][c]. "No weight is given to findings of fact that the IRS may have made in its administrative processing of the case." *Id.* As stated by the U.S. District Court for the District of Delaware in *Pierson v. United States,* 428 F.Supp. 384, 390 (D.Del.1977), "[t]he reasons for the Commissioner's determination are not relevant for the Court does not review those reasons." This precept was later echoed by the district court for the Eastern District of Michigan, in *Garity v. United States,* 81-2 U.S.Tax Cas. (CCH) ¶ 9599, at 88,005-006 (E.D.Mich.1980), *cited in Estate of Akin v. United States,* 31 Fed.Cl. 89, 97 (1994), wherein the court explained that the "conclusions and reasoning of IRS agents are irrelevant to the validity of the assessment...." We concur in the view that the factual findings, if any, underlying the Commissioner's determination of tax liability are irrelevant and entitled to no evidentiary weight. This position is, of course, fully consistent with the *de novo* nature of tax refund proceedings in the Court of Federal Claims (as well as in the district courts), in which the taxpayer bears the full burden of proof (*i.e.,* both the burden of production and of persuasion). *See* Part IV.C, *infra.*

In an analogous case, *Sara Lee Corp. v. United States,* 29 Fed.Cl. 330 (1993), the taxpayer argued that a revenue agent's report embodied an agreement by the IRS that certain favorable adjustments were not at issue. The court held as follows:

> Plaintiff completely ignores the fact .that by initiating this lawsuit it placed "at issue" all of the 170 favorable adjustments underlying its refund claim ... Thus,

contrary to plaintiff's belief, defendant is not required to provide evidence that the agreed adjustments are "in issue."

*Id.* at 337 (citations omitted). Just as a plaintiff, by litigating his claim, places at issue all favorable adjustments underlying his refund claim, so too does he place at issue any factual determination made by the IRS underlying the determination of his tax liability. Therefore, by bringing this action, IP has placed the amount of its casualty loss (*i.e.,* the volumes and FMVs of timber damaged or destroyed) at issue.

Finally, we note that, even if the factual determinations of the IRS were entitled to a presumption of correctness, such a presumption would surely be rebuttable. Thus, defendant would be entitled to adduce evidence to rebut said presumption. It is precisely this type of evidence that the government is seeking, through discovery, in the case at bar. Accordingly, because the factual findings of the IRS carry no weight in this court, we hold that the IRS's audit and alleged acceptance of IP's volumes and FMVs of damaged timber did not and could not conclusively settled that factual issue in this tax refund action. However, under certain circumstances, the IRS can conclusively settle issues with taxpayers at the administrative level. One potential means of doing so is the execution of a Form 870-AD.

### 2. *Form 870-AD*

■ IP maintains that the execution of a Form 870-AD by the government precludes defendant from disputing the volumes and FMVs of damaged timber that plaintiff asserts were agreed to. According to plaintiff, the overassessment reflected for the 1978 tax year on the Form 870-AD was derived using the volumes and FMVs that it claims may not now be disputed. On its face, however, the Form 870-AD says nothing about timber volumes or FMVs. Rather, it merely states that IP is entitled to a specific dollar amount ($582,200) for the 1978 tax year. Moreover, IP's right to file a refund claim for the Hurricane Frederic Casualty Loss Issue is expressly reserved by the terms of the agreement. Lastly, there is no evidence in the record (as opposed to counsel's unsup-

ported assertion) to support the averment that the specific dollar amount corresponding to the overassessment for 1978 was arrived at using the figures advanced by plaintiff.

▮ Furthermore, even assuming that said overassessment was in fact premised on IP's figures, the Form 870–AD does not preclude further factual development on the amount of plaintiff's casualty loss. Indeed, as noted above, this issue is expressly left open by the agreement, and, in any event, the parties to a settlement agreement "are bound to the terms agreed upon and not to the premises underlying their agreement." *Pack v. United States,* 992 F.2d 955, 959–60 (9th Cir.1993) (citing *Zaentz v. Commissioner,* 90 T.C. 753, 761, 1988 WL 34876 (1988), and discussing a closing agreement between a taxpayer and the IRS). In other words, "general contract law principles govern tax case settlements," *Treaty Pines Invs. Partnership v. Commissioner,* 967 F.2d 206, 211 (5th Cir.1992), and nothing in the language of the Form 870–AD prohibits defendant from contesting (or dispenses with plaintiff's burden of proof respecting) the amount of IP's casualty loss, now that IP has chosen to bring this tax refund action. Therefore, we hold that the Form 870–AD executed by the parties does not conclusively establish the volumes and FMVs of timber damaged by Hurricane Frederic. Thus, further factual development of the amount of the alleged casualty loss by defendant is appropriate.[4]

3. *Current "Agreement" by the IRS with IP's Volumes and FMVs of Damaged Timber*

▮ Relying on the admission by defendant that the IRS "agree[s]" that IP realized

certain damage from Hurricane Frederic, plaintiff argues that defense counsel may not now take a position contrary to that of his client, the IRS. Evidently, plaintiff construes the use of the present tense to refer to an agreement by the IRS concurrent with this litigation before the court and after the completion of all administrative proceedings before the IRS. To the extent that plaintiff's interpretation is correct, however, we must reject this line of argument.

First of all, the IRS is not the defendant in this tax refund case; the United States is. Moreover, after a case leaves the administrative level and a tax refund case is filed in the Court of Federal Claims, the IRS no longer has primary responsibility over that case. Rather, the Department of Justice bears the responsibility for speaking on behalf of the government and conducting the proceedings in this court. *See United States Department of Justice v. Tax Analysts,* 492 U.S. 136, 138, 109 S.Ct. 2841, 2844–45, 106 L.Ed.2d 112 (1989). Put another way, it is beyond the scope of the IRS's authority to settle unilaterally a factual issue in a case pending in this court, after administrative proceedings are complete and the case has been referred to the Department of Justice. 26 U.S.C. § 7122(a) (1994).[5] *See also United States v. Forma,* 784 F.Supp. 1132, 1139 (S.D.N.Y. 1992) ("Once a tax matter is referred to the Department of Justice, only the Attorney General or a person to whom authority has been delegated may settle the matter."). *Cf. Sanders v. Commissioner,* 225 F.2d 629, 633 (10th Cir.1955) (holding that only Treasury officials could compromise a tax case *prior* to

---

**4.** In *Kretchmar v. United States,* 9 Cl.Ct. 191, 198 (1985), this court held that a Form 870–AD could equitably estop a taxpayer from litigating a tax refund claim, provided that three conditions were met: "(1) the execution of the Form 870–AD was the result of mutual concession or compromise; (2) there was a meeting of the minds that the claims be extinguished; and (3) that to allow [one party] to reopen the case would be prejudicial given the [other party's] reliance on the extinguishment thereof." At bar, plaintiff has not shown any meeting of the minds that the volumes and FMVs of IP's damaged timber would be settled as a result of the execution of the Form 870–AD, and no such meeting of the

minds is disclosed on the face of the document. Accordingly, the principle of equitable estoppel is inapplicable on these facts.

**5.** Section 7122(a) provides:

The Secretary [of the Treasury] may compromise any civil or criminal case arising under the internal revenue laws *prior* to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case *after* reference to the Department of Justice for prosecution or defense.

26 U.S.C. § 7122(a) (emphasis added).

a reference of the matter to the Department of Justice).

Thus, we regard a post-administrative "agreement" by the IRS with IP's volumes and FMVs the same way we would an identical "agreement" by the Department of Veteran's Affairs, for example. Accordingly, any current agreement or agreement in 1992, when plaintiff's requests for admission were admitted by defendant, is nonbinding at a minimum and possibly wholly irrelevant. Moreover, the admitted statement is noticably silent on several points: who at the IRS "agree[d]"; on what grounds, if any, was that person authorized to do so; and was the agreement memorialized in writing, or was it merely, an informal, oral agreement? All this, of course, supports the view that the requests for admission refer to the events at the administrative level, which we have already determined do not conclusively bind defendant.

### C. Tax Refund Litigation in the Court of Federal Claims

 It is well-settled that a tax refund suit in the Court of Federal Claims "is a *de novo* proceeding, in which the plaintiff bears the burden of proof" with respect to each and every element of its claim. *Sara Lee*, 29 Fed.Cl. at 334. *See also Helvering v. Taylor*, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935) (burden of proof); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) (burden of proof); *Young & Rubicam, Inc. v. United States*, 410 F.2d 1233, 1238 (Ct.Cl.1969) (burden of proof); *George E. Warren Corp. v. United States*, 141 F.Supp. 935, 940 (Ct.Cl.1956) ("The tax laws contemplate a trial *de novo*"); *L.W. Hardy Co. v. United States*, 1 Cl.Ct. 465, 470 (1982) ("taxpayer has the burden of proof"). Plaintiff's burden is that of production as well as persuasion. *Sara Lee*, 29 Fed.Cl. at 334. "This means that the taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination ... Even after satisfying this burden, the taxpayer must still carry the ultimate burden of proof." *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7–8 (Fed.Cir.1990) (citations omitted). In other words, plaintiff must prove not only that the Commissioner's determination was erroneous but also the precise dollar amount of the refund to which it is entitled. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Eli Lilly & Co. v. United States*, 372 F.2d 990, 997 (Ct.Cl. 1967); *Missouri Pac. R.R. v. United States*, 338 F.2d 668, 671 (Ct.Cl.1964).

 Given the foregoing, it is uncontrovertible that plaintiff must adduce sufficient evidence at trial to carry its burden of proving the amount of its casualty loss (as well as the resultant deduction). This means that IP must prove the diminution in the FMV of its damaged timber property occasioned by Hurricane Frederic in 1979, as well as its adjusted basis in the damaged property. Moreover, as explained above, plaintiff may rely neither on administrative findings nor on defendant's admissions to *conclusively* establish the quantum of its casualty loss. This is a trial *de novo*, in which plaintiff is expected to produce evidence supporting a refund, "*not* a quasi appellate review of an administrative determination." *Hearst Corp. v. United States*, 28 Fed.Cl. 202, 230 (1993) (emphasis added). "When a suit is brought for the recovery of taxes, the taxpayer must affirmatively show that he has overpaid his taxes since 'an overpayment must appear before refund is authorized.'" *Missouri Pac.*, 338 F.2d at 671 (quoting *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932)).

### D. Reasonableness of Defendant's Discovery Requests

 As noted previously, discovery in this case had been closed until the court ordered, on September 11, 1995, that "[t]he parties may engage in voluntary discovery regarding the Hurricane Casualty Loss Issue ... to the extent that both parties agree that the factual inquiry is reasonable and not unduly burdensome." At bar, IP alleges that the factual inquiry defendant seeks to pursue through discovery is *unreasonable* and *unduly burdensome*. However, the only prejudice that plaintiff alleges it will suffer if the government is permitted to obtain the contested discovery is the expense and time of litiga-

tion associated with proving every element of its tax refund claim. Unfortunately, it is a simple fact of life that litigation can be expensive and time-consuming, especially when attempting to prove a claim of substantial dollar value in a *de novo* proceeding. Since this is precisely what it should have been prepared to do all along, the "prejudice" to plaintiff does not amount to an undue burden, especially "taking into account the needs of the case, the amount in controversy, the limitations on the parties' resources, and the importance of the issues at stake in the litigation." RCFC 26(b)(ii).

Conversely, we find on this record that defendant's requested discovery is not unreasonable, given the issues at bar. Counsel for IP has indicated that it intends to prove the amount of its casualty loss using a casualty loss damage report (supplemented by testimony) prepared by IP using a random sample methodology. The government asserts that it needs the requested discovery so that it may test the accuracy and validity of the methodology used by IP to determine its casualty loss and, if necessary, rebut plaintiff's report and witnesses. Such a request is not unreasonable given that plaintiff bears the burden of proving the quantum of its casualty loss, for which it seeks a tax deduction.

Moreover, it appears that the government's latest discovery requests were generated as a result of depositions taken of certain IP employees (*e.g.*, deposition of Arthur Verdel, May 2, 1996). In addition, defendant requires the documents sought through discovery in order to gain a complete understanding of the damage report already provided voluntarily by IP to the government. Finally, both parties agreed that this court's September 1, 1994 decision in *Weyerhaeuser*, *supra*, merited a reopening of discovery. The only dispute now is the extent of that reopening. Plaintiff concedes that identification of the SIP is an appropriate area for discovery. Given that the identification of the SIP is the analytical *first* step in determining the quantum of a casualty loss, *see Weyerhaeuser*, 32 Fed.Cl. at 109, the ultimate issue of quantifying the diminution in

FMV of each SIP is necessarily open if the SIP is in contention.

Furthermore, on August 2, 1996, the Federal Circuit decided the appeal in *Weyerhaeuser*, wherein the court framed the issue as the "determination of what measure of *Weyerhaeuser's* property is the appropriate single identifiable property." *Weyerhaeuser*, 92 F.3d at 1150 (emphasis added). In this connection the Federal Circuit, in *Weyerhaeuser*, held that "[t]he determination of the single identifiable property as set forth in *Westvaco* controls *this case*." *Id.* at 1151 (emphasis added). In reaching this conclusion, the Federal Circuit embraced the following holding in *Westvaco*:

> We hold that the single, identifiable property damaged or destroyed in the case of *this plaintiff* was all of the standing timber in the area of the individual district [*i.e.*, depletion block] directly affected by each casualty.

*Westvaco*, 639 F.2d at 720 (emphasis added), *quoted in Weyerhaeuser*, 92 F.3d at 1151. Thus, the court of appeals found that the operative facts established Weyerhaeuser's SIP, like Westvaco's, as the depletion block. That decision obviously sheds new light on the issues in the instant case. Therefore, we do not regard defendant's requested discovery as untimely.

## V. CONCLUSION

Plaintiff bears the burden of showing "good cause" in support of the entry of a protective order. RCFC 26(c). For all of the foregoing reasons, the court finds that IP has failed to establish good cause in support of its motion. Thus, plaintiff's motion for a protective order is hereby DENIED. Accordingly, and for the reasons set forth above, defendant's motion to compel discovery is GRANTED. Plaintiff shall respond to (*i.e.*, admit or deny) defendant's requests for admission and shall produce the documents identified in defendant's fourth request for the production of documents forthwith.

IT IS SO ORDERED.