**WEYERHAEUSER COMPANY,
and Subsidiaries, Plaintiff–
Appellant,**

v.

**The UNITED STATES, Defendant/Cross–
Appellant.**

Nos. 95–5083, 95–5088.

United States Court of Appeals,
Federal Circuit.

Aug. 2, 1996.

Robert L. Moore, II, Miller & Chevalier, Chartered, Washington, D.C., argued for plaintiff-appellant. With him on the brief were John B. Magee, Alan I. Horowitz, and Patricia J. Sweeney. Of counsel was Christopher S. Rizek.

George L. Squires, Attorney, Tax Division, Department of Justice, Washington, D.C., ar-

gued for defendant/cross-appellant. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Chief, Appellate Section, Kenneth L. Greene and Mildred L. Seidman.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Weyerhaeuser Company and Subsidiaries (together Weyerhaeuser) and the United States each appeals aspects of the decision of the United States Court of Federal Claims [1] concerning income tax liability for certain casualty losses of timber stands, upon application of 26 U.S.C. § 165 and related laws and regulations. We conclude that the depletion block, not the tree stand, is the "single, identifiable property," Treas. Reg. (26 C.F.R.) § 1.165–7(b)(2), for the purposes of determining Weyerhaeuser's casualty loss; the contrary decision of the Court of Federal Claims is reversed. We affirm the court's decision that a subsequently recognized gain from salvage operations does not preclude a casualty loss deduction. The case is remanded to the Court of Federal Claims for recalculation and award of the refund owed to Weyerhaeuser.

## I

## THE CASUALTY LOSS DEDUCTION

As a result of several forest fires in the years 1980 through 1983 and the volcanic eruption of Mount St. Helens in 1980, approximately $236.4 million worth of timber and other forest related assets owned by Weyerhaeuser were damaged or destroyed. Limited by the adjusted basis of the property, Weyerhaeuser claimed a casualty loss of approximately $23.4 million. The Service disallowed all but approximately $3 million of casualty loss, on the Service's method of calculation of the adjusted basis. After paying the deficiency Weyerhaeuser brought suit in the Court of Federal Claims, arguing that precedent required use of Weyerhaeuser's method for calculation of the adjusted basis of the damaged or destroyed property.

*The Adjusted Basis*

An uncompensated casualty loss is deductible from adjusted gross income in accordance with 26 U.S.C. § 165:

> There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

The general rule for determining the amount of casualty loss deduction is set forth in Treas. Reg. § 1.165–7(b)(1):

> **General rule.** In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either—
>
> (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or
>
> (ii) The amount of the adjusted basis prescribed in § 1.1011–1 for determining the loss from the sale or other disposition of the property involved.

Implementing this rule, the difference is determined between the fair market value of the affected property immediately before and immediately after the casualty, and compared to the adjusted basis computed in accordance with Treas. Reg. § 1.1011–1.

The adjusted basis is, in essence, the taxpayer's investment. Typically, the cost of the property (the original basis) is adjusted upward when additional investments are made in the property (*e.g.*, capitalized improvements such as planting or seeding) and downward when deductions are taken (*e.g.*, depreciation or depletion). The adjusted basis is the point of reference for calculating gain or loss when the taxpayer disposes of the property, and sets the limit of the casualty loss deduction. In accordance with Treas. Reg. § 1.165–7(b)(1), the amount of deductible loss can not exceed the adjusted basis of the property.

**1.** *Weyerhaeuser Co. and Subsidiaries v. United States,* 32 Fed. Cl. 80 (1994).

### The Single, Identifiable Property

The regulations state that loss is to be determined "by reference to the single, identifiable property damaged or destroyed." Treas. Reg. § 1.165–7(b)(2):

**Aggregation of property for computing loss. (i)** A loss incurred in a trade or business or in any transaction entered into for profit shall be determined under subparagraph (1) of this paragraph by reference to the single, identifiable property damaged or destroyed.

The issue in this case centers on determination of what measure of Weyerhaeuser's property is the appropriate single, identifiable property for the various loss events.

Since most of the timber acreage was purchased many years ago at relatively low prices, its adjusted basis is substantially below the fair market value of the timber growing thereon. Thus, if timber is damaged or destroyed on a tract of land having a relatively low basis, the casualty loss deduction may be limited to an amount well below the actual loss in value of the timber. *See* Treas. Reg. § 1.165–7(b)(1)(ii). The larger the single, identifiable property, the larger the adjusted basis; and when less than all the timber is damaged or destroyed, the greater the portion of the casualty loss that may be deductible when the actual loss exceeds the adjusted basis.

Weyerhaeuser states that the single, identifiable property is correctly defined as the depletion block. The depletion block is the area into which the taxpayer aggregates its timber according to logical standards specified by regulation, *see* Treas. Reg. § 1.611–3(d)(1), such as geographical or political boundaries, management areas, or manufacturing points. Thus the depletion block is that subdivision of a taxpayer's forest holdings selected as a means of tracking the adjusted basis in the timber. Treas. Reg. § 1.611–3(c). As trees are planted, mature, and are harvested, the adjusted basis of the timber changes; the depletion block is the unit of forest for which such changes are accounted. *See generally* Treas. Reg. § 1.611–3.

Weyerhaeuser not only grows and harvests timber but also processes that timber into products such as building materials and paper products. Weyerhaeuser's holdings are divided into eleven depletion blocks, each of which is established by aggregating the forest that supplies timber to a particular manufacturing facility. Each depletion block is managed separately in light of the end use of the timber growing therein. Weyerhaeuser has organized its depletion blocks in this fashion since 1946, making occasional changes to reflect changes in its operations. Although the Commissioner has the power to change Weyerhaeuser's depletion blocks for "good and substantial reasons," Treas. Reg. § 1.611–3(d)(5), this has never been done.

Since changes in the basis of the timber are tracked only by means of the depletion blocks, Weyerhaeuser states that this is the most reasonable way of determining the adjusted basis for casualty loss purposes. Weyerhaeuser states that any other subdivision of its holdings would be a difficult, if not impossible, accounting task, and an unfair and unwarranted way of defeating the purpose of the law to permit deduction of casualty losses up to the adjusted basis of the property that experienced the loss. Based on the depletion block as the single, identifiable property, Weyerhaeuser calculated a deduction limit of $23.4 million for its actual loss of $236.4 million.

The Commissioner declined to use the depletion block as the single, identifiable property. Instead the Commissioner defined the single, identifiable property as the "tree stand," a much smaller area that is used for some forest management purposes. The tree stand is an aggregation of trees that is sufficiently homogeneous to be distinguishable from adjoining growth. Holding that the tree stand is the correct measure of the single, identifiable property, the Court of Federal Claims affirmed the Commissioner's reduction of Weyerhaeuser's casualty loss limit to approximately $3 million. Weyerhaeuser argues that binding precedent does not permit the designation of the tree stand as the single, identifiable property, in the general circumstances of this case.

## Binding Precedent

■ In 1980 the Court of Claims designated the depletion block as the appropriate single, identifiable property when computing adjusted basis for purposes of timber casualty loss. In *Westvaco Corp. v. United States,* 225 Ct.Cl. 436, 639 F.2d 700 (1980) the taxpayer suffered a loss to its timberlands from storms and fires, and sought to deduct the statutorily permitted portion of the loss. The Commissioner argued for a relatively narrow definition of the single, identifiable property, in that case, "a unit (a board foot in the case of sawtimber or a cord in the case of pulpwood) of merchantable timber contained in the merchantable trees suffering mortal injury." The Commissioner essentially argued that the deduction was to be calculated one tree at a time. The Court of Claims rejected that position, and held that the basis limitation on a casualty loss deduction should be measured by the "property" definition set in Treas. Reg. § 1.611–1(d)(1):

> "Property" means—... (ii) in the case of timber, an economic interest in standing timber in each tract or block representing a separate timber account....

The Court of Claims analyzed Westvaco's organization of its woodlands into depletion blocks and, finding that this organization met both the accounting needs imposed by the tax code and the operational needs of effective forest management, held that the depletion block was the proper measure of the single, identifiable property:

> We hold that the single, identifiable property damaged or destroyed in the case of this plaintiff was all of the standing timber in the area of the individual district directly affected by each casualty.

639 F.2d at 720. The court explained that the depletion block maintains its own "identifiable adjusted basis unaffected by other such units." *Westvaco,* 639 F.2d at 717. The court deemed it "logical and reasonable" to use the same property unit for casualty loss purposes as had consistently been used for tax accounting purposes. *Id.*

2. *South Corp. v. United States,* 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982) (*en banc*) (adopt-

The Court of Federal Claims declined to follow *Westvaco.* Stating that the determination of the single identifiable property was "either a question of fact or a mixed question of fact and law," the Court of Federal Claims took the position that this excused its obligation to precedent, stating that the government's argument concerning the tree stand in the Weyerhaeuser case distinguished it from the *Westvaco* case. The Court of Federal Claims then held as a matter of fact that the single identifiable property was the tree stand, not the depletion block. However, the ruling in *Westvaco* was reached on summary judgment, as a matter of law. It is binding precedent for the Court of Federal Claims, as it is for the Federal Circuit [2] unless overruled by this court *en banc.*

■ The determination of the single identifiable property as set forth in *Westvaco* controls this case. This ruling is well supported by the reasoning of the Court of Claims, recognizing that the timber accounting system established by the regulations leaves the depletion block as the only property which "remains constant and identifiable and has a cost or adjusted basis that is not changed except by elimination of an asset or by an injection of capital...." *Westvaco,* 639 F.2d at 717. Thus the correct rule is that the single, identifiable property is the depletion block when that property serves for commercial, forest management, and depletion purposes.

The judgment of the Court of Federal Claims is vacated. We remand with instructions that the casualty loss deduction be calculated on the basis that the depletion block is the single, identifiable property for the purpose of 26 U.S.C. § 165 and implementing regulations.

## II

## SALVAGE OPERATIONS

The government appeals the holding of the Court of Federal Claims that sustained Weyerhaeuser's tax treatment of gains from its salvage operations. Weyerhaeuser had invoked the statutory provision authorizing de-

ing the precedent of the Court of Claims and the Court of Customs and Patent Appeals).

ferred recognition of gain following involuntary conversion. *See generally* 26 U.S.C. § 1033 ("Involuntary Conversions"). As an involuntary conversion as defined in Treas. Reg. § 1.1231–1(e)(1) ("the conversion of property into money or other property as a result of complete or partial destruction, . . . ."), reinvested salvage gains are subject to deferral under 26 U.S.C. § 1033.

The government argues that a taxpayer can not realize both a gain and a loss from the same casualty event, and that the gain from the salvage operations precluded Weyerhaeuser from deducting any loss arising from the casualty. The government also argues that salvage proceeds are "otherwise" compensation for purposes of 26 U.S.C. § 165 ("There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.")

### Deferral of Realized Gain

■ Weyerhaeuser's salvage operations following the Mount St. Helens eruption began in 1980 and continued into 1982. Weyerhaeuser's income from salvaging damaged timber exceeded its adjusted basis, whether the adjusted basis was calculated based on the depletion block or some lesser area such as the tree stand. With the Commissioner's authorization Weyerhaeuser deferred recognition of these gains until subsequent years. Pursuant to 26 U.S.C. § 1033(a)(2)(A) when property is converted involuntarily and a gain results, recognition of that gain may be deferred to the extent that the gain is reinvested in other property that is similar or related in service or use to the converted property, for the purpose of replacing the converted property. Weyerhaeuser reinvested its salvage proceeds primarily in reforestation and purchases of timber and timberland, thus qualifying for the deferral. The deferred gain is not recognized until the replacement property is sold or otherwise disposed of. 26 U.S.C. § 1231(a).

As discussed in Part I *ante*, the taxpayer's casualty loss deduction is limited to the lesser of the adjusted basis in the property or the decrease in its market value, Treas. Reg. § 1.165–7(b)(1), thus accommodating the possibility that the damaged property will have some value after the casualty. Applying § 1033, the Court of Federal Claims permitted Weyerhaeuser to deduct the casualty loss in the year of the loss, and defer recognition of the reinvested salvage-based gains. The Court of Federal Claims held, correctly, that the casualty loss and the subsequent sale of salvaged timber are separate events, and need not be combined and set off for tax purposes "because the Service granted taxpayer permission to defer recognition of these gains under I.R.C. § 1033, and plaintiff satisfied that section's requirements." *Weyerhaeuser,* 32 Fed. Cl. at 142 (footnote omitted). The Commissioner argues that the 1980 casualty loss must be offset against the salvage gain realized in 1980.

Precedent supports the ruling that gain from salvage of damaged timber is independent of the casualty loss deduction. *See, e.g., Forward Communications Corp. v. United States,* 221 Ct.Cl. 582, 608 F.2d 485, 501 (1979) ("The statute does not bar a deduction for a loss actually incurred merely because the taxpayer is able to effect an offsetting gain on a different although contemporaneous transaction."); *Cox v. United States,* 537 F.2d 1066, 1070 (9th Cir.1976) ("Congress has provided that casualty losses to business property are accorded an ordinary deduction even when the eventual disposition of the property may be treated as a capital gain.") (footnote omitted); *cf. United States v. S.S. White Dental Mfg. Co.,* 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927) (taxpayer was allowed a deduction in the year of loss despite a later, unexpected gratuitous payment by another party).

The government would require Weyerhaeuser to offset its salvage gain against its casualty loss unless it were to delay its salvage operations until a subsequent tax year. Weyerhaeuser points out that to have delayed salvage operations would have resulted in further losses, for damaged trees are vulnerable to disease. The government's position is unsupported by any discernable policy reason, and contrary to statute and precedent. The Court of Federal Claims correctly concluded that since the taxpayer recognized casualty losses in 1980, and deferral of sal-

vage gains was permitted, offset was not required.

### Salvage Value Is Not "Compensation"

■ The government argues that the regulation's requirement that "proper adjustment shall be made for any salvage value" when determining the casualty loss compels the result it seeks:

> 26 C.F.R. § 1.165–1(c)(4). In determining the amount of loss actually sustained for purposes of section 165(a), proper adjustment shall be made for any salvage value and for any insurance or other compensation received.

However, Weyerhaeuser states and the government does not dispute that salvage value was accounted for in calculating its casualty loss. Weyerhaeuser's treatment of the salvage proceeds as an involuntary conversion does nothing more than avoid the immediate tax consequences of the conversion of capital assets when reinvesting the salvage income in similar capital assets, as statute and regulation permit.

The government also argues that salvage proceeds comprise "other compensation" for purposes of 26 U.S.C. § 165 and the implementing regulation. The regulation distinguishes "salvage value" from "other compensation," as does precedent. The Court of Federal Claims correctly held that "insurance or other compensation" refers to "such things as reimbursement, claims recovery, settlement, adjudication, insurance, and negligence." Such compensation has the purpose of making the injured party whole, as distinguished from funds received for salvage of damaged property. In *Forward Communications* the Court of Claims explained that the refusal of a loss deduction when other compensation is received applies when the taxpayer has a legal right of recovery from that source. 608 F.2d at 501. For example, the Tax Court interpreted the compensation available under the Disaster Relief Act of 1970 as having the characteristics of insurance:

> The general purpose of insurance is to spread the risk of loss from "any of the innumerable perils that beset the person who is active under the conditions of mod-

ern life among a large number of those who are exposed to similar perils."

*Shanahan v. Commissioner*, 63 T.C. 21, 24, 1974 WL 2744 (1974) (quoting Vance, *Insurance* 4 (3d ed.1951)).

Salvage operations are unrelated to the purpose of spreading the risk of loss. Salvage does not have the characteristics of insurance, and its value was correctly held not to comprise "other compensation" for the purposes of 26 U.S.C. § 165.

The Court of Federal Claims held that Weyerhaeuser had correctly accounted for salvage value in calculating its casualty loss, and that any gain realized from subsequent salvage operations was a separate event for tax purposes. The Court of Federal Claims correctly interpreted and applied the statute. The decision that Weyerhaeuser's deferred gain from its salvage operations need not be set off against the realized casualty loss is affirmed.

### COSTS

Costs to Weyerhaeuser.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*