## WEYERHAEUSER COMPANY AND SUBSIDIARIES, Plaintiff,

v.

## The UNITED STATES, Defendant.

No. 393–89T.

United States Court of Federal Claims.

Oct. 23, 1997.

Robert L. Moore, II, Washington, DC, attorney of record, for plaintiff.

George L. Squires, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

## INTRODUCTION

The above-referenced federal income tax refund case is pending before the court on remand from *Weyerhaeuser Co. v. United States*, 92 F.3d 1148 (Fed.Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 713 (1997), *aff'g in part and rev'g in part*, 32 Fed.Cl. 80 (1994). At issue is the calculation of the casualty loss deductions to which plaintiff is entitled, pursuant to 26 U.S.C. § 165(a), as a result of the destruction of certain timber properties by the volcanic eruption of Mount St. Helens in 1980 and various forest fires in the years 1980 through 1983. Rejecting this court's finding at trial

that each *tree stand* is "the single, identifiable property damaged or destroyed" (*i.e.*, the SIP) within the meaning of Treas. Reg. § 1.165–7(b)(2), the Court of Appeals for the Federal Circuit held, as a matter of law, that the SIP is the timber depletion block, a much larger physical area comprised of multiple tree stands. *Weyerhaeuser*, 92 F.3d at 1151.[1] Accordingly, on remand the court must determine plaintiff's allowable casualty loss deductions by reference to each of the depletion blocks affected by the relevant casualty events, *i.e.*, the volcanic eruption and the forest fires. For each depletion block so affected, plaintiff's casualty loss deduction is limited to the lesser of (i) the diminution in the fair market value of the depletion block as a result of the casualty event, or (ii) the amount of the adjusted basis of the depletion block. Treas. Reg. § 1.165–7(b)(1).

Based upon the prior findings at trial, plaintiff's casualty loss deductions, attributable to the volcanic eruption of Mount St. Helens in 1980 and the adjusted basis of the depletion blocks damaged or destroyed by forest fires in the years 1980 through 1983, are undisputed. Defendant asserts, however, that plaintiff "failed to carry its burden of proof as to the diminution in the fair market value of its timber depletion blocks by reason of fires." Joint Status Report, filed August 18, 1997, at 1. As a consequence, defendant refuses to stipulate to the amount of the tax refund due plaintiff as a result of the aforesaid forest fires. *Id.* The parties agree that, if defendant correctly construes this court's prior written findings of fact, plaintiff is entitled to a refund in the sum of $7,295,861.94, plus statutory interest. *Id.* at 2. Conversely, if plaintiff has carried its burden of proving the diminution in the fair market value of the depletion blocks injured by forest fires, the parties agree that plaintiff is entitled to a

refund in the sum of $11,003,138.00, plus statutory interest. *Id.*

On August 25, 1997, plaintiff moved the court to enter judgment in its favor pursuant to RCFC 58. Defendant filed no response to plaintiff's motion,[2] but instead the parties jointly moved, on October 17, 1997, to suspend proceedings indefinitely. Therein, the parties represent that defendant is presently reviewing a settlement offer by plaintiff and, further, that the parties will advise the court of the status of their settlement efforts no later than December 31, 1997.

## DISCUSSION

In order to sustain its entitlement to casualty loss deductions for the timber depletion blocks damaged or destroyed by forest fires, plaintiff "must ... establish that the damage and destruction resulted in a reduction of the fair market value of the 'single, identifiable property.'" *Westvaco Corp. v. United States*, 225 Ct.Cl. 436, 445, 639 F.2d 700, 707 (1980) (quoting Treas. Reg. § 1.165–7(b)(2)).[3] At trial, plaintiff claimed that the diminution in the fair market value of its timber depletion blocks as a result of forest fires totalled $6,693,991, consisting of $1,236,780 of losses relating to mature timber and $5,457,211 of losses relating to immature "reproduction timber." *Weyerhaeuser*, 32 Fed. Cl. at 109. As to the mature timber, the court was "satisfied that taxpayer has proven its ... loss in the amount of $1,236,780 (diminution in fair market value) resulting from the fires." *Id.* at 127. Regarding the reproduction timber, we found that "plaintiff has proven ... its loss (diminution) in fair market value ($5,457,211)." *Id.* at 128.

Against these express, unequivocal findings of fact, amply supported by evidence in the record, defendant's contention that the diminution in the fair market value of plain-

---

1. The depletion block is "the area into which the taxpayer aggregates its timber according to logical standards ... such as geographical or political boundaries, management areas, or manufacturing points ... [and is] that subdivision of a taxpayer's forest holdings selected as a means of tracking the adjusted basis in the timber." *Weyerhaeuser*, 92 F.3d at 1150. *See generally* Treas. Reg. § 1.611–3.

2. Defendant's position, discussed *infra*, is adequately described by defendant's earlier post-trial submissions concerning the computation of the refund due to plaintiff.

3. *See also id.* at 469–70, 639 F.2d at 720–21 (to same effect, remanding for determination of the diminution in the fair market value of the timber properties damaged or destroyed).

tiff's depletion blocks is unproven hinges upon a single sentence in the court's trial opinion as follows:

> In view of the foregoing, and as previously discussed, plaintiff, of course, *failed* to value the blocks in which it contends the fire casualties in fact occurred, but, simply *and correctly,* we find, valued the specific *tree stands* within which the identifiable *affected* property was situated.

*Id.* at 127 (emphasis in original).[4] In the quoted sentence, the court merely observed that plaintiff had taken an additive approach which combined the valuation of individual tree stands into a total valuation for each depletion block, rather than valuing each depletion block as a unitary property.[5] However, defendant construes the court's observation to imply a fundamental failure of proof as to any diminution in the value of the SIP. Implicit in defendant's position is the contention that the diminution in the fair market value of plaintiff's timber depletion blocks somehow differs from the sum of the individual diminutions in fair market value suffered by every damaged tree stand within said timber depletion blocks. Put another way, defendant suggests that plaintiff's proof of the diminution in fair market value fails to establish that the *whole*—the depletion block—equals the sum of the *parts*—the multiple tree stands within.

Defendant's argument is easily disposed of. First, all of plaintiff's proof with respect to the diminution in fair market value of its timber properties was "proffered solely on the basis that *the* 'single identifiable property' is the *depletion block* and not the smaller but totally affected timber stand unit." *Id.* at 95 n. 32 (emphasis in original).[6] Second, plaintiff's calculation of the diminution in fair market value, which was performed on the basis of the depletion block, *supra,* results in "a determination *equal to substantially the same results* had the valuation analysis been done on the basis of individual fires instead of on the basis of a composite analysis by regions/blocks." *Id.* at 127 (emphasis added). These two findings are incontestable, inasmuch as there was no holding on appeal that *any* findings of fact at trial were clearly erroneous. *Weyerhaeuser,* 92 F.3d 1148 *passim.* Finally, it bears reiterating that defendant failed to offer one scintilla of countervailing evidence respecting the diminution in the fair market value of plaintiff's timber due to forest fires. *Weyerhaeuser,* 32 Fed.Cl. at 127.

## CONCLUSION

After reviewing the parties' submissions concerning the computation of the refund due to plaintiff, the court observes that defendant first raised its objection to the sufficiency of plaintiff's proof of the diminution in the fair market value of the depletion blocks affected by forest fires 14 months ago, on August 23, 1996.[7] Since that occasion, the parties have thoroughly ventilated the refund computation issue, both orally and in writing, for this court's benefit.[8] The parties suggest, and

---

**4.** *See* Defendant's Memorandum Regarding Refund Computation, filed February 5, 1997, at 3–4; Defendant's Reply Memorandum Regarding Refund Computation, filed February 21, 1997, at 2.

**5.** The court cautions that this statement should not be read as an unqualified endorsement of plaintiff's valuation methodology. To the contrary, prudence counsels a similarly-situated taxpayer to eschew the fragmented, additive approach and establish its prima facie case by proving the diminution in the fair market value of *the* SIP, *i.e.,* the timber depletion block viewed as a unitary property. *See Westvaco,* 225 Ct.Cl. at 445, 469–70, 639 F.2d at 707, 720–21. A taxpayer that follows plaintiff's example does so at its own peril because, here at bar, defendant presented *no* probative evidence suggesting that the additive and the unitary valuation approaches yield materially different results. *See Weyerhaeuser,* 32 Fed.Cl. at 127.

**6.** *See also id.* at 128 (observing that diminution in value resulting from forest fires had been proven in the aggregate, *i.e.,* with respect to depletion blocks).

**7.** Transcript of Status Conference held August 23, 1996, at 28.

**8.** *See* Defendant's Memorandum Regarding Refund Computation, filed February 5, 1997; Plaintiff's Memorandum Regarding Refund Computation, filed February 5, 1997; Defendant's Reply Memorandum Regarding Refund Computation, filed February 21, 1997; Plaintiff's Reply To Defendant's Memorandum Regarding Refund Computation, filed February 21, 1997; Transcript of Status Conference held June 13, 1997; Joint

the court perceives, no compelling reason why this matter demands additional argument, briefing, or delay. Against this background, therefore, the parties' Joint Motion For Suspension Of Proceedings, dated October 17, 1997, and filed with the Clerk's Office on October 22, 1997, is hereby DENIED, and Plaintiff's Motion For Entry of Judgment, filed on August 25, 1997, is hereby GRANTED.

Based on the foregoing analysis, plaintiff is perforce entitled to judgment in the sum of $11,003,138.00, comprised of a refund of taxes in the amount of $8,963,841.00 and a refund of assessed interest in the amount of $2,039,-297.00, said amounts having been stipulated as the refund due plaintiff should it prevail, plus interest pursuant to law, 26 U.S.C. § 6611(b)(2). The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.

Status Report filed August 18, 1997; Plaintiff's Motion For Entry Of Judgment filed August 25,

