**INTERNATIONAL PAPER COMPANY
and Consolidated Subsidiaries,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–119T.**

United States Court of Federal Claims.

Nov. 4, 1997.

---

Dennis P. Bedell, Washington, DC, for plaintiff.

George L. Squires, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

Currently pending before the court is plaintiff's motion for partial summary judgment, filed May 27, 1997, in the above-referenced federal income tax refund case. In said motion, plaintiff contends that, as a matter of law, each of its four (4) Alabama and Mississippi timber depletion blocks that were damaged or destroyed by Hurricane Frederic in September of 1979 is a "single, identifiable property" (*i.e.,* the SIP), within the meaning of Treas. Reg. § 1.165–7(b)(2), for purposes of determining the limitation on the amount of its casualty loss deduction pursuant to 26 U.S.C. § 165(a) (hereinafter, the

"Hurricane Frederic Casualty Loss SIP Issue").[1] Summary judgment is proper only where there is no dispute as to any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Lane Bryant, Inc. v. United States*, 35 F.3d 1570, 1574 (Fed.Cir.1994).

At first blush, the Hurricane Frederic Casualty Loss SIP Issue seems ripe for summary disposition, inasmuch as defendant avers that it "does not oppose plaintiff's motion for partial summary judgment on the issue whether the single, identifiable properties damaged or destroyed are the four depletion blocks that were affected by Hurricane Frederic." *See* Defendant's Response To Plaintiff's Motion For Partial Summary Judgment, filed July 23, 1997. Moreover, at a status conference held on September 25, 1997, defendant unequivocally conceded, on the record, that no genuine issues of material fact exist with respect to the Hurricane Frederic Casualty Loss SIP Issue.[2] Pursuant to the aforesaid status conference, the court directed the parties to "file a joint stipulation as to *all* operative facts relating to the dispositive SIP issue." Order Dated September 25, 1997 (emphasis added). Thereafter, the parties filed a responsive joint stipulation, containing the following provisions *in haec verba:*

1. International Paper is an integrated, world-wide forest products company principally engaged in the production and sale of pulp, paper, packaging, lumber, and plywood products.

2. International Paper maintains substantial timberlands to help ensure an adequate source of raw material (merchantable timber) to its various manufacturing facilities.

3. International Paper separates its timber holdings into different timber depletion blocks, generally based on whether the timber is owned in fee or held pursuant to a long-term lease and also based on geographic or political boundaries.

4. In Alabama and Mississippi, International Paper's timber depletion blocks include Alabama Fee, Alabama U.S. Steel, Alabama Lease, and Mississippi Fee. In 1979 these blocks collectively contained approximately 1.4 million acres of timber. Each block has been maintained for many years.

5. In 1979, International Paper's timber depletion accounts were the original sources of all the historical cost basis of the timber within each block for both financial and accounting purposes, and were used for timber tax depletion and financial operational purposes.

6. On September 12, 1979, and continuing into the next day, Hurricane Frederic struck the coasts of Mississippi, Alabama, and Florida.

7. The storm moved along the Mississippi–Alabama state line and caused extensive damage to property in seven counties in Mississippi and four counties in Alabama. Lighter damage occurred in an additional 10 counties in Mississippi, Alabama, and Florida.

8. International Paper had extensive timber holdings in the affected counties in Alabama and Mississippi. These timber holdings include the Alabama Fee, Alabama U.S. Steel, Alabama Lease, and Mississippi Fee timber depletion blocks.

9. In 1979, hurricane damage to IP's [International Paper's] timber was not covered by insurance. [And]

---

1. Plaintiff's complaint, filed February 6, 1990, raised nine (9) separate substantive refund issues. On April 27, 1995, plaintiff was granted summary judgment on three issues. *International Paper Co. v. United States*, 33 Fed.Cl. 384 (1995). Thereafter, the parties settled an additional four issues in October of 1996. Joint Memorandum Re: Issues & Damages, filed October 11, 1996. Thereafter, an eighth issue was tentatively settled, pending approval by the Joint Committee On Taxation pursuant to 26 U.S.C. § 6405(a). Joint Status Report On Further Pro-

ceedings, filed February 21, 1997; Transcript Of Status Conference Held September 25, 1997, at 3–4, 17. Thus, only plaintiff's refund claim relating to Count IV, timber casualty losses caused by Hurricane Frederic, remains for the court's decision on the merits.

2. Transcript Of Status Conference Held September 25, 1997, at 5–7. Moreover, defendant reiterated that it concedes said issue on the merits. *Id.* at 4.

10. Two of IP's principal competitors in the Southeast United States are Westvaco and Weyerhaeuser.

Joint Stipulations Of Fact, filed October 6, 1997 ("Jt.Stip."). For the reasons stated hereinafter, it is not immediately apparent that the parties have fully complied with the court's directive to stipulate as to *all* the operative facts relating to the Hurricane Frederic Casualty Loss SIP Issue. Yet, upon thoughtful consideration of the legal principles governing the determination of the SIP in the context of timber casualty losses, we conclude that plaintiff is entitled to summary judgment on the Hurricane Frederic Casualty Loss SIP Issue.

### DISCUSSION

■ In explicating the operative factual elements of the SIP determination in the case of timber casualty losses, the Court of Appeals for the Federal Circuit has declared that, as a matter of law, the SIP is the timber depletion block "when that property serves for *commercial, forest management, and depletion purposes.*" *Weyerhaeuser Co. v. United States*, 92 F.3d 1148, 1151 (Fed.Cir. 1996) (emphasis added), *cert. denied*, —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 713 (1997). *aff'g in part and rev'g in part*, 32 Fed. Cl. 80 (1994).[3] Thus, a proffered timber property must serve three rather simplistic purposes in order to be deemed the SIP damaged or destroyed: (i) a commercial purpose; (ii) a forest management purpose; and (iii) a depletion purpose. This appears to be so, irrespective of the size of the block and whether the quantum thereof actually damaged or destroyed is substantial or *de minimis*. In the case at bar, the *stipulated facts* plainly and irrefutably establish that plaintiff's four timber depletion blocks served depletion purposes. Jt. Stip. at ¶ 5.

Less certain, on the facts as stipulated, is the extent to which commercial and forest management purposes influenced plaintiff's designation, maintenance, and use of its timber depletion blocks. Had the parties simply stipulated *in haec verba* that plaintiff's four timber depletion blocks serve "commercial [and] forest management ... purposes," consistent with the Federal Circuit's pronouncement in *Weyerhaeuser, supra,* the conclusion would effortlessly follow that no genuine issue of material fact precludes summary judgment. However, rather than follow the straightforward, unconvoluted approach to drafting their stipulations of fact, the parties elected instead to aver vaguely that plaintiff's timber depletion accounts supplied the historical cost data of the timber within each depletion block for "both financial and accounting purposes" and, further, that said accounts were used for "financial operational purposes." Jt. Stip. at ¶ 5. In addition, the parties stipulated that plaintiff's division of its timber holdings into different depletion blocks is based on "whether the timber is owned in fee or held pursuant to a long-term lease," as well as on the basis of "geographic or political boundaries." Jt. Stip. at ¶ 3.[4] Consequently, the court must consider, on this record—whether the parties' choice of language presents or, more precisely, fails to negate a genuine issue of material fact pertinent to the Hurricane Frederic Casualty Loss SIP Issue.

■ It is axiomatic that the parties may not stipulate the court into error, for the court may disregard any stipulation that is inadvertent, contrary to law, contrary to fact, or made without proper authority. *Kaminer Constr. Corp. v. United States*, 203 Ct.Cl.

---

**3.** The depletion block is "the area into which the taxpayer aggregates its timber according to logical standards ... such as geographical or political boundaries, management areas, or manufacturing points ... [and is] that subdivision of a taxpayer's forest holdings selected as a means of tracking the adjusted basis in the timber." *Weyerhaeuser*, 92 F.3d at 1150. *See generally* Treas. Reg. § 1.611–3.

**4.** Commercial and forest management purposes are no doubt evident in plaintiff's status as "an

integrated, world-wide forest products company" which "maintains substantial timberlands to help ensure an adequate source of raw material (merchantable timber) to its various manufacturing facilities." Jt. Stip. at ¶¶ 1–2. However, merely regurgitating or parroting the truism that plaintiff is engaged in the timber business fails to *ipso facto* establish commercial and forest management rationales for plaintiff's designation of certain timberlands as depletion blocks.

182, 197, 488 F.2d 980, 988 (1973).[5] The parties quite rightly declined to stipulate that each of plaintiff's four depletion blocks constitutes a SIP, for the Federal Circuit has unequivocally held that the SIP determination presents a question of law. *Weyerhaeuser*, 92 F.3d at 1151. That the litigants cannot bind the court with a stipulation of law has been long settled, and is clear beyond cavil. *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289, 37 S.Ct. 287, 289–90, 61 L.Ed. 722 (1917).[6]

For precisely the same reason, it is an incomplete answer to say that defendant, by virtue of its written and oral statements, has conceded the Hurricane Frederic Casualty Loss SIP Issue by judicial admission. A judicial admission is a "formal act, done in the course of judicial proceedings, which waives or dispenses with *the production of evidence*, by conceding for purposes of litigation that *the proposition of fact* alleged by the opponent is true." *Hofer v. Bituminous Casualty Corp.*, 260 Iowa 81, 148 N.W.2d 485, 486 (1967), *quoted with approval in Weyerhaeuser*, 32 Fed.Cl. at 118 (emphasis added) (additional citations omitted). Thus, from an *evidentiary* viewpoint, "[j]udicial admissions are conclusively binding on the party asserting them." *Id.* (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir.1990); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988)). In the present case, the court finds that defendant's oral statements on the record in open court and its written submissions are the sort of "deliberate, clear and unequivocal" formal acts which constitute judicial admissions. *Anderson Bros. Corp. v. O'Meara*, 306 F.2d 672, 676 (5th Cir.1962). Yet defendant's judicial admissions are not dispositive of the controlling question of *law*, *i.e.*, the SIP determination. On the contrary, the sole function of defendant's judicial ad-

missions, as with the parties' joint stipulations of fact, is to conclusively establish the uncontroverted character of the *facts* thereby averred, for purposes of deciding plaintiff's motion for partial summary judgment. Defendant's lack of opposition to the pending motion means only that the court *may*, in its discretion, enter summary judgment insofar as defendant, the nonmoving party, has elected not to "set forth specific facts showing that there is a genuine issue for trial." RCFC 56(e). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). However, whether the court *must* enter summary judgment depends upon whether the parties' stipulations of fact meet plaintiff's initial burden of production under RCFC 56(c). *Id.* at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To this question we now turn.

At the threshold, the operative question presented is—whether the parties' stipulations of fact obviate the need for a trial as to the Hurricane Frederic Casualty Loss SIP Issue, *i.e.*, "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consistent with this principle, the court's inquiry in ruling on plaintiff's motion for partial summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252, 106 S.Ct. at 2512. Therefore, entry of partial summary judgment for plaintiff is proper only if the court, sitting as the trier of fact, could reasonably conclude that the parties' stipulations of fact establish the three operative factual elements of the SIP determination by a preponderance of the evidence.[7]

---

5. Decisions of the former Court of Claims are binding precedent for this Court, as well as for the Federal Circuit unless overruled by that Court *en banc*. *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982) (*en banc* ).

6. Were it otherwise, the court would forsake that bedrock principle of American jurisprudence, announced many years ago by Mr. Chief Justice Marshall: "It is emphatically the province of the

judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

7. Also relevant, but not materially so, are the affidavits submitted with plaintiff's motion for partial summary judgment. The parties' stipulations of fact reproduce in all significant respects the averments in said affidavits.

As already noted herein, *supra*, the court regards the "depletion purpose" element as proven by virtue of the parties' stipulations. But the inquiry does not end there, for the parties' stipulations must also support a reasonable factual inference that plaintiff has created and used its four depletion blocks with commercial and forest management purposes in mind. *Weyerhaeuser*, 92 F.3d at 1151. While it is undeniable that the parties may freely stipulate to whatever facts they desire, "*the trial court has a duty to reject stipulations which are demonstrably false.*" *Dillon, Read & Co., Inc. v. United States*, 875 F.2d 293, 300 (Fed.Cir.1989) (emphasis added). On the other hand, "at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Having applied these competing considerations to the stipulated facts at bar, the court is satisfied that plaintiff is entitled to judgment, as a matter of law, that each of its four timber depletion blocks constitutes a SIP.

On these stipulated facts, a reasonable trier of fact could logically conclude that commercial and forest management purposes motivate plaintiff's division of its timber holdings into different depletion blocks, since plaintiff makes these designations on the basis of "whether the timber is owned in fee or held pursuant to a long-term lease," as well as on the basis of "geographic or political boundaries." Jt. Stip. at ¶ 3. As an integrated forest products company, plaintiff undoubtedly has sound commercial and forest management reasons for keeping leased timberlands and owned timberlands separate and distinct. In the former case, but not the latter, it certainly seems plausible that commercial and forest management decisions would take contractual relations with a lessor into account. Likewise, political boundaries may very well affect how timberlands are managed from the standpoint of compliance with applicable state forestry laws, and geographic boundaries surely raise the implica-

tions of differing climatic and soil conditions upon the choice of silvicultural practices. The parties also stipulate that plaintiff used its timber depletion accounts relating to each depletion block for "financial operational purposes," and as the source of historical cost data of the timber within each depletion block for "both financial and accounting purposes." Jt. Stip. at ¶ 5. To infer commercial purposes from this language does not strain credulity. Moreover, where an integrated forest products company is concerned, the reference to "financial *operational* purposes" suggests a link to forest management decisions.

In sum, therefore, a reasonable trier of fact could find that the parties' stipulations of fact make out a *prima facie* case that the four timber properties designated by plaintiff as depletion blocks served "commercial, forest management, and depletion purposes," as a matter of law. *Weyerhaeuser*, 92 F.3d at 1151. As a consequence of defendant's unequivocal acquiescence to plaintiff's motion for partial summary judgment, there is no countervailing evidence. Accordingly, a reasonable trier of fact could rationally conclude, on the basis of this *prima facie* case, that the three operative factual elements of the SIP determination have been established by the necessary preponderance of the evidence. Plaintiff is, therefore, entitled to summary judgment on the Hurricane Frederic Casualty Loss SIP Issue.

Our conclusion finds independent support in the formulation of the rule laid down by the Federal Circuit in *Weyerhaeuser, id.* Although the Federal Circuit failed to expressly address the relative importance of the three operative factual elements of the SIP determination, it seems manifestly apparent that the "depletion purpose" element, so plainly demonstrated here at bar, is entitled to predominant weight.[8] In *Weyerhaeuser*, the findings, at trial, amply supported the conclusion that the "tree stand," a physical unit of timber much smaller in area than the depletion block, served many commercial and forest management purposes. *Weyerhaeu-*

---

8. The Federal Circuit's *Weyerhaeuser* opinion cannot be faithfully read to imply that the "depletion purpose" element is entitled to *dispositive* weight, since the "commercial" and "forest management" purposes would thereby be rendered mere surplusage.

*ser*, 32 Fed.Cl. at 111–18. Notwithstanding its disagreement with the ultimate conclusion below that each tree stand constituted a SIP, the Federal Circuit declined to hold that *any* of the findings of fact at trial were clearly erroneous. *Weyerhaeuser*, 92 F.3d 1148 *passim*. Ergo, the fact that the taxpayer's proffered SIP designation—the depletion block—corresponded to its timber property designation for "depletion purposes" plainly tipped the evidentiary scales in the taxpayer's favor.

In short, *Weyerhaeuser* appears to instruct that a proffer of the depletion block as the SIP tends to foreclose somewhat the factual inquiry into the taxpayer's designation of its timber properties for "commercial" and "forest management" purposes.[9] Here at bar, each of the plaintiff's four timber depletion blocks is proffered as a SIP. Furthermore, in the posture of summary disposition pursuant to RCFC 56, there need not be an evidentiary record on which formal findings of fact might be based. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Lacking a discernible mandate to engage in a searching factual inquiry as to how plaintiff's timber properties are designated for commercial and forest management purposes, the court is constrained to conclude that the parties' stipulations of fact comply in all material respects with the standard for timber SIP determinations set out in *Weyerhaeuser*, 92 F.3d at 1151. Thus, inasmuch as no genuine issue of *material* fact exists with respect to the Hurricane Frederic Casualty Loss SIP Issue,

plaintiff is entitled to judgment as a matter of law.

## CONCLUSION

■ Based upon the foregoing analysis, plaintiff's motion for partial summary judgment, filed on May 27, 1997, is hereby GRANTED. With respect to the amount of tax refund relating to the court's resolution of the Hurricane Frederic Casualty Loss SIP Issue in plaintiff's favor, the parties are hereby directed to file a joint status report with the court no later than December 15, 1997. Said joint status report shall explain the progress of the parties' efforts to reach agreement on the proper measure of the diminution in the fair market value of the four timber depletion blocks damaged by Hurricane Frederic, in accordance with the court's order dated September 25, 1997.[10]

IT IS SO ORDERED.

---

9. Precisely how much this factual inquiry is constrained remains uncertain. The answer presumably awaits a timber casualty loss case in which the taxpayer's timber depletion blocks are constituted solely for tax depletion purposes, and serve no commercial or forest management purposes whatever. This difficult question is not squarely presented here.

10. Having resolved the principal disputed issue of law presented by this claim, the court is confident that the parties can settle the few remaining issues of fact relating to the amount of the tax refund due to plaintiff, so as to bring this litigation to a close without a lengthy trial held solely on the issue of damages. For each of the four timber depletion blocks damaged by Hurricane Frederic, plaintiff's casualty loss deduction is limited to the lesser of (i) the diminution in the fair market value of the depletion block as a result of the casualty event; or (ii) the amount of

the adjusted basis of the depletion block. Treas. Reg. § 1.165–7(b)(1). The adjusted basis of each of the four depletion blocks in question is undisputed, as defendant admitted in its response, dated April 15, 1992, to plaintiff's Request For Admission No. 284. *See also* Transcript Of Status Conference Held September 25, 1997, at 11 (defendant conceding same). As to the other element bearing upon the determination of plaintiff's deductible casualty loss, it is clear that plaintiff has the burden of proving that the damage and destruction wrought by Hurricane Frederic diminished the fair market value of the SIP. *Westvaco Corp. v. United States*, 225 Ct.Cl. 436, 445, 639 F.2d 700, 707 (1980). *See also id.* at 469–70, 639 F.2d at 720–21 (to same effect, remanding for determination of the diminution in the fair market value of the timber properties damaged or destroyed).