USCA1 Opinion

 

 April 23, 1993 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-1759 JOHN C. TALLEY, ETC., Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellant. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued April 14, 1993, is amended as follows: On the cover sheet: after Hon. Juan M. Perez-Gimenez, add an asterisk, and in the corresponding footnote state: "Of the District of Puerto Rico, sitting by designation." On the cover sheet: after Hon. Juan M. Perez-Gimenez, substitute "U.S. District Judge" for "U.S. District Court." ___ _______________ ___________________ On page 6, line 2: substitute "his refund" for "its refund." On page 15, lines 7-8: substitute "he offered" for "it offered." On page 15, line 13: substitute "he has" for "it has." On page 15, line 14: substitute "his refund" for "its refund." On page 16, line 1: substitute "his refund" for "its refund." UNITED STATES COURT APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1759 JOHN C. TALLEY, ETC., Plaintiff, Appellee, v. UNITED STATES OF AMERICA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Juan M. Perez-Gimenez*, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Cyr and Boudin, Circuit Judges. ______________ ____________________ D. Patrick Mullarkey, Attorney, Department of Justice, with whom ____________________ Richard S. Cohen, United States Attorney, James A. Bruton, Acting _________________ ________________ Assistant Attorney General, Gary R. Allen, Attorney, Department of ______________ Justice, Kenneth L. Greene, Attorney, Department of Justice, and __________________ Paula K. Speck, Attorney, Department of Justice, were on brief for ______________ appellant. Joseph J. Rodio with whom Jeffrey M. Gibson, Charles D. Mills and _______________ _________________ ________________ Rodio & Ursillo, Ltd. were on brief for appellee. ____________________ ____________________ ____________________ * Of the District of Puerto Rico, sitting by designation. April 14, 1993 ____________________ BOUDIN, Circuit Judge. This case started as a dispute _____________ between John Talley ("Talley"), co-executor of the estate of Percy Talley, and the United States over the tax liability of the estate. The tax issues have become snarled in confusion wrought by a cryptic notice from the Internal Revenue Service, a loosely worded request to admit filed by Talley, and a set of litigation errors by the government. After trial, the district court entered judgment for Talley on his tax refund claim and disallowed the government's effort to assert a counterclaim. We reverse the district court and remand for further proceedings. I. THE FACTS In October 1984, Talley, acting as co-executor for the estate, entered into a stipulation with the IRS regarding the amount of taxes owed by the estate. This stipulation, filed in the Tax Court, provided that the estate's total tax liability was $345,103.21. Of this, $222,000 had been paid, leaving an outstanding liability of $125,103.21. The stipulation also provided that the estate could submit proof that it had paid certain state taxes, which would further reduce its outstanding liability. The stipulation also noted that of the $345,103.21 tax liability, $288,836.97 had been "assessed"and $56,266.24was a"[d]eficiency (tobe assessed)."2 ____________________ 2Assessment is the formal step in which the IRS determines that a specific amount of tax is currently due and owing to the government from the taxpayer, making the -2- -2- In November 1984, the IRS sent the estate a notice which, as it is the cause of half the confusion, requires description. Under the heading "Statement of Tax Due On Federal Tax Return," it showed as the first entry in the "Assessment" column the figure $56,266.24, designated "tax"; under this was the figure $1,478.80, designated "int," presumably interest. The second column, under the heading "Adjustment or Credit," contained the figure $57,767.39, apparently designed to reflect credits against liability allowed by the IRS. Finally, in a third column headed "Balance Due" there appeared the figure $977.65, which reflected the difference between the first column figures and the second column figure. In January 1985, the estate paid this net amount, $977.65. Six months later, in May 1985, the IRS sent the estate a "Statement of Adjustment to Your Account," fixing the estate's outstanding tax liability at $294,046. The stated liability, much above the net amount due under the Tax Court stipulation, appears to include penalties and interest not previously assessed. In any event, the estate declined to pay. In response, the IRS began to levy on bank accounts held by the estate and its distributees, ultimately collecting approximately $94,000. In the government's view, ____________________ taxpayer liable for that amount. Rambo v. United States, 492 _____ _____________ F.2d 1060, 1061 n.1 (6th Cir. 1974), cert. denied, 423 U.S. ____ ______ 1091 (1976). -3- -3- it was still owed at least $200,000, with interest continuing to accrue. Talley, by contrast, took the position that no taxes were owing and that the levies were therefore unlawful. After exhausting administrative remedies, the estate in January 1989 filed a complaint in the district court seeking a refund of the approximately $94,000. The complaint contended that the estate's outstanding tax liability had been wholly eliminated prior to the levies. Talley's complaint averred that this happy situation resulted from a combination of state tax credits, allegedly amounting to $77,544, and the November 1984 notice, which (according to the complaint) "zeroed out" any remaining obligations of the estate to the IRS. The concept of "zeroing out" was not explained in the complaint, nor has it been explained since. Although the government believed that it was still owed $200,000 or more by the estate, it neglected in answering the complaint to file a timely counterclaim for the balance. See ___ Fed. R. Civ. P. 13. It then failed to respond at all to Talley's request for admissions served on the government on October 11, 1989, pursuant to Fed. R. Civ. P. 36. Request no. 12 asked the government to admit that the estate's $977 disbursement in response to the November 1984 notice "constituted full payment of the balance due on the estate of Percy Talley as set forth in that notice." Under Fed. R. -4- -4- Civ. P. 36(a), the failure to respond to a such a request is deemed a binding admission, unless the court later grants leave under Fed. R. Civ. P. 36(b) to withdraw the admission. New government counsel took over the case in spring 1990, and the case was set for trial in July 1990. In June 1990 the government sought leave to amend its answer and assert a counterclaim. The government's excuse for this belated action was that at the time of the original answer, counsel had lacked the Secretary of the Treasury's approval to assert a counterclaim. That motion was denied by the district court on June 19, 1990, even though in the meantime the court had (for other reasons) deferred the trial until October 1990. The court's reasons for refusing to allow the counterclaim are discussed more fully below. Government counsel also advised the district court in June 1990 that the government would promptly file a motion seeking leave to withdraw its admission by default to request no. 12. The government never filed such a motion, later taking the view (in a pretrial statement filed on September 10, 1990) that the admission was literally accurate and harmless to the government's position. The government's new interpretation was that it had properly admitted that the $977 payment constituted full payment of the estate's liability "as set forth in" the notice; but since the notice was inaccurate, this admission (the government argued) did -5- -5- not establish that the payment discharged the taxpayer's actual liability. A trial was held before the district court on October 12, 1990. At trial, Talley based his refund claim primarily upon the government's admission to request no. 12. Over Talley's objection, the court permitted the government to introduce evidence of Talley's tax liability according to the government's calculations. But the court accepted the evidence subject to the court's reserved ruling on Talley's claim that the government's admission of request no. 12 barred the evidence and resolved the case. The court stated: Just so we are clear, I'm allowing [the government] to present this evidence because I do not know what I'm going to do and I wouldn't like to have to come back and get some more hearing or get some more testimony. . . [i]f I decide that you are stuck with your admission . . ., it would mean you would be precluded. The government also moved to amend its pleadings to conform to the evidence introduced. After trial, the district court issued a memorandum opinion in which it rejected the government's interpretation of request no. 12, and concluded that the request referred to the estate's actual liability. The court held that the admission conclusively established that the estate's $977 payment satisfied its total tax liability, and the court therefore entered judgment in favor of the estate for the -6- -6- approximately $94,000 seized from the estate's bank accounts. The government then appealed, arguing that its admission pursuant to request no. 12 had been wrongly construed and that its counterclaim should have been allowed. II. DISCUSSION Talley has not claimed in this court any prejudicial reliance on the original November 1984 notice. It would be difficult as a factual matter to make any such claim since about six months later the IRS asserted that the estate owed over $294,000, and there is no indication that in the meantime any detrimental reliance had occurred. Indeed, authorities do not give much comfort to taxpayers invoking estoppel even when there has been reliance. On the contrary, the government has even prosecuted taxpayers for cashing refund checks issued in error. See, e.g., United States v. ___ ____ ______________ McRee, 984 F.2d 1144 (11th Cir. 1993). _____ Talley's position on appeal, however, does not depend directly on the original notice or upon estoppel doctrine. Rather, it is based upon request no. 12 which the government "admitted" by failing to answer. The district court read the request, as admitted, to establish that the estate's total tax liability in November 1984 was only $977.66. An admission under Fed. R. Civ. P. 36(a) is, by the terms of the rule, binding on the party making the admission and cannot be contradicted. Thus, if the district court properly construed -7- -7- request no. 12, the government was bound by its admission (unless the court sua sponte should have permitted the ___ ______ government to withdraw the admission). Although the question is a close one, we believe that both the November 1984 notice and request no. 12 have been misconstrued. The construction of documents presents, in the absence of contested background facts, a pure issue of law open to de novo review. See Trust Under the Will of Bingham ___ _______________________________ v. Commissioner, 325 U.S. 365, 379-80 (1945). The district ____________ court's effort at construction was complicated by the government's own changes in position and its failure adequately to place the documents in context. Nevertheless, we conclude that the original November 1984 notice did not state that the estate's total tax liability was only $977, and the admission by default to request no. 12 did not do so either. The November 1984 notice is, of course, an opaque and potentially misleading document, but in these respects it does not differ from many IRS notices apparently generated by computers. No doubt taken in isolation the notice could be misunderstood by a lay reader to suggest that the estate owed only $977; but it cannot be taken in isolation and that is not what it says. Juxtaposed with the Tax Court stipulation, it is clear that the November 1984 notice merely reflects three separate tax events: the original additional deficiency -8- -8- assessment promised by the stipulation ($56,266.24), plus a small amount of accrued interest ($1,478), minus credits ($57,767.39) allowed by the IRS to reduce the estate's outstanding liability. The net effect of these three adjustments was to increase the estate's assessed liability by $977.65 ($56,266.24 + $1,478 - $57,767.39). That figure was, as the notice said, a "Balance Due" but only as the net result of the three adjustments. The notice did not say that the balance-due figure captured the estate's total tax liability. One who looked only at the notice might think otherwise, but any lawyer or estate executor who looked also at the stipulation would understand how these figures fit together and recognize the limited role of the notice. Indeed, only a month before the estate had stipulated to a vastly larger debt of $123,103.21 ($66,836.97 assessed but unpaid plus $56,266.24 not yet assessed but conceded) and had apparently made no payments since then.3 This brings us to request no. 12. This request was the last one in Talley's first set of requests to admit, and it followed 11 individual paragraphs that asked only that the ____________________ 3In other words, as of October 29, 1984, the estate had agreed that it owed $123,103.21. The IRS notice the next month allowed a credit of only $57,767.39, so--quite apart from any accrued interest or penalties--Talley should have known that over $65,000 remained unpaid as of the date of the notice. -9- -9- government admit that the listed documents (in the first 11 request paragraphs) were "true copies" of what they purported to be. No. 12 was worded somewhat differently: Request No. 12 ______________ 12. Admit that the payment of Nine Hundred Seventy-seven ($977.65) Dollars and 65/100 by John Talley concerning the Notice of Tax Due dated November 29, 1984 (Exhibit 1), constituted full payment of the balance due on the estate of Percy Talley as set forth in that notice. This last request, whether deliberately or not, is an invitation to confusion. First, it misstates by implication the gist of the notice, leaving the impression (with the words "full payment") that total tax liability was the subject of the notice when in fact the notice did not reflect the total balance due from the estate. Second, by ending with the phrase "as set forth in that notice," the request allows one reader to think that an admission would merely concede that the estate had in fact paid the amount "set forth in the notice" and another reader to think that it would concede that the notice correctly stated the estate's tax liability. Of course, neither reading makes much sense. The first reading of the request asks the government to admit a fact that no one would dispute; the second, to admit a point that the government could not ever intentionally concede, since-- apart from inaccuracy--it would give away the lawsuit. If the government had bothered to read the request, presumably -10- -10- it would have said in response that the payment of $977.65 did constitute "full payment" of the amount stated in the notice but that the amount stated at the end of the notice did not reflect--or even purport to reflect--the full tax liability of the estate. Instead, the government let the request go unanswered.4 In all events, we think that request no. 12, read against the background of the October 1984 stipulation and the November 1984 notice, cannot fairly be read as a request by Talley that the government admit that the $977.65 payment satisfied the actual total liability of the estate. To the extent that the request is ambiguous, that ambiguity is to be construed against Talley (whose lawyer drafted the request). See Dixon v. Commissioner, 62 T.C.M. (C.C.H.) 1440, 1511 ___ _____ ____________ (1991). And to the extent that common sense is a guide to construction, a reading that trivializes the request is preferred to one that renders the request absurd. In short, treating the government as bound by its admission of the request, we believe it has admitted only what it has never denied: that the $977.65 payment corresponded to the amount set forth in the notice. ____________________ 4When it got around to reading the request in June 1989, the government then compounded the confusion by first reading the request as Talley now urges (and telling the district court that it would move to withdraw the admission) and then reading the request merely to admit that the amount stated in the request had been paid (making a withdrawal of the admission unnecessary). -11- -11- Since in our view the district court misconstrued request no. 12, its judgment in favor of Talley--which rests solely on the government's admission of request no. 12-- cannot stand. The scope of the remand is addressed at the conclusion of this opinion. We do not reach the government's alternative argument that, if the request were read in Talley's favor, then the government should have been permitted to withdraw its admission. Such an argument itself raises troublesome questions that we readily leave for another day.5 The other issue presented by the government on this appeal is whether the district court erred when it refused to permit the government belatedly to file a counterclaim. It will be recalled that Talley sued the government to recover the levies against the estate bank account amounting to about $94,000. From the government's standpoint, not only did Talley have no right to a refund but, in addition, the estate still owed the government for unpaid taxes, penalties and interest, which the levies had only partially recovered. It is undisputed that the government's claim for any balance due ____________________ 5For example, whether Talley's reliance on the admission was unreasonable; whether Talley would suffer any "prejudice" from a belated withdrawal in the technical sense specified by Rule 36(b); and whether the government's motion to conform the pleadings to the evidence could be construed as an implied, conditional request to withdraw the admission. -12- -12- is a compulsory counterclaim which, if not properly asserted in this case, is lost forever. Fed. R. Civ. P. 13(a). Under the rules, the government should have asserted its counterclaim when answering Talley's complaint. Fed. R. Civ. P. 13(a). Instead, it waited for over a year and a half to do so, explaining that it had not asserted the claim in its answer because it needed to await approval from the Secretary of the Treasury. At the time its motion to amend the answer was filed in June 1990, the case was then on the eve of trial. The trial date was then postponed for several months, from June to October, when the government proposed to call Talley's counsel as a witness, but the district court nevertheless ruled after the postponement that the motion for leave to file the counterclaim came too late. "It is incomprehensible," said the district court, "that it took the government well over one year to obtain authority from the Secretary of the Treasury . . . ." The court also said that allowing the counterclaim at this point would expose Talley "to significant prejudice at this stage of the proceeding," as well as "to substantial inconvenience." The district court did not explain the basis for any finding of either prejudice or inconvenience. Talley's memorandum opposing the motion to assert the counterclaim did make a claim of prejudice; in somewhat veiled fashion, it suggested that, if the estate had been timely advised of the -13- -13- counterclaim, it would have summoned witnesses to show that oral statements of an IRS representative in July 1988 conceded "that no liability remained with regard to this estate." How this issue--the district court's refusal to permit a belated counterclaim--should be resolved in the ordinary case is open to debate. On the one hand, the government's 18- month delay in advancing its counterclaim is substantial and its excuse lame; perhaps the Secretary had not approved the counterclaim when the answer was due but that did not require the government to wait for 18 months, until after discovery was completed, to assert a counterclaim that was evident from the outset. Trial judges, who have considerable discretion in such matters, are understandably loath to entertain new claims in June when trial is scheduled for July, when discovery has been completed, and when the government has little excuse for so long a delay in asserting its claim. The government, on the other hand, reasonably argues that its counterclaim motion was not resolved until after the trial had been postponed until October, alleviating inconvenience. More important, virtually the same evidence the government would be expected to offer to refute Talley's refund claim would, if the government's proof were valid, also establish its own right to affirmative recovery. Finally, the only "prejudice" from a withdrawal described by -14- -14- Talley is not very persuasive: Talley's bare claim of an IRS oral misstatement in 1988 would not, even if proved, establish a conventional estoppel, no detriment of reliance having been described; and even a conventional estoppel might well not prevail against the government in a tax case. Office of Personnel Management v. Richmond, 496 U.S. 414, 427 ______________________________ ________ (1990) ("not a single [Supreme Court] case has upheld an estoppelclaim against thegovernment forthe paymentof money"). We have concluded that in the somewhat unusual circumstances of this case, we need not decide whether the district court in July 1990 should have allowed the counterclaim to be pleaded. Here, a reopening of the trial record is warranted, in the interests of justice, based solely upon our decision that the district court misread request no. 12. Strictly speaking Talley could be held to the proof he offered at trial, which was little beyond the admission to request no. 12. But we think that the government bears much of the responsibility for the imbroglio, first by not responding to the request, and then by offering inconsistent readings of it to the district court. Thus, our remand will permit Talley to assert whatever evidence he has or can develop in a reasonable time -15- -15- to support his refund claim and to contest the government computations on a basis other than request no. 12.6 By the same token, we think that in the interests of justice, the government should be entitled to assert its counterclaim. Whatever the situation may have been in July 1990, Talley now has ample time to adduce whatever facts may be relevant to either the refund claim or the counterclaim-- and they are likely to be pretty much the same facts. There is no surprise element now and the trial record must be reopened in any event to permit Talley to support his refund claim. Our outcome--allowing Talley to pursue his refund claim and the government to pursue its counterclaim--appears to us to be the most equitable way to shape the required remand. The judgment of the district court is vacated and the _______ case remanded for further proceedings in accordance with this ________ opinion. ____________________ 6There is no reason why this opportunity should not include reasonable additional discovery if Talley provides the district court with a basis to think discovery might be fruitful. -16- -16-