ESTATE OF Richard FRUSHER and Cecelia Frusher, Administrator of the Estate of Richard Frusher, Plaintiffs,

v.

ABT ASSOCIATES, INC., Defendant.

C.A. No. 07–475 S.

United States District Court, D. Rhode Island.

Aug. 13, 2009.

Seth A. Perlmutter, Esq., Perlmutter Law, Cranston, RI, for Plaintiff.

Mark A. Pogue, Esq., Heather A. Pierce, Esq., Edwards Angell Palmer & Dodge LLP, Providence, RI, for Defendant.

## OPINION AND ORDER

WILLIAM E. SMITH, District Judge.

Plaintiffs, Cecelia Frusher and the Estate of Richard Frusher, brought suit in Rhode Island Superior Court against Richard's former employer Defendant Abt Associates, Inc. ("Abt") alleging breach of contract on life insurance, health insurance, and pension plans allegedly in place during Richard's employment with Abt in the 1970s. Defendant removed pursuant to 28 U.S.C. § 1441(a), basing jurisdiction on diversity of citizenship, and now seeks summary judgment on all counts. For the

reasons stated below, Defendant's motion is granted.

## I. Background

On December 18, 1972, Richard Frusher began working for Abt Associates, Inc. as a full-time analyst in Abt's Cambridge, Massachusetts office. During Richard's employment, Abt had employee plans in place for life and health insurance and pension benefits. Abt's health and life insurance plans stated: "The insurance for you and your dependents will terminate if you terminate your employment or cease to be actively employed." (Mar Aff. Ex. G (Doc. 16).) Upon termination, both health and life insurance were to be continued "for a period of 31 days during which time you may change to an individual policy regardless of your physical condition." *Id.* An additional provision allowed for the continuation of life insurance benefits if the employee became totally disabled prior to reaching age 60. This provision applied only if "proof of total and continuous disability is furnished from year to year as required." *Id.* Abt's pension plan provided:

> In the event a Participant shall terminate employment and incur a One–Year Break in Service before completion of ten (10) years of Continuous Service or attaining age sixty-five (65), such Participant shall have a deferred Vested Benefit equal to the following percentage of the Participant's Accrued Benefit, as of the date of termination of employment.
>
> If the Participant has under three (3) Years of Service, the percentage shall be zero (0).

(Mar Aff. Ex. H (Doc. 16).)

In December 1974, Richard stopped working due to mental illness, and in March 1975, he applied and was granted long term disability benefits, which he continued to receive until his death in 2005. On October 1, 1975, Richard's employment was formally terminated. His health insurance and life insurance were terminated effective November 1, 1975. Richard never elected to change his health or life insurance coverage to an individual policy nor did he furnish Abt with the information which might have allowed him to continue his life insurance benefits in light of his disability. Though Abt did not formally communicate to Richard that he had been terminated, it did advise Cecelia in January 1976 that she would have to seek new health insurance benefits because Abt was no longer paying the premiums.

In 1978, Richard and Cecelia divorced and Richard moved to Massachusetts, living with his parents in East Longmeadow until their deaths in 1983. He then lived on his own in Massachusetts until 1994, when he moved back in with Cecelia in Rhode Island. The couple remarried in 1995. In July 1995 and October 1996, Richard retained two different attorneys who wrote letters to Abt asserting claims for the benefits now at issue in this case. On both occasions, Abt communicated to Richard, through his two attorneys, its position that no benefits were owed him. From January to June of 1996, Cecelia corresponded by letter with Abt's Director of Human Resources and Manager of Employee Benefits, respectively, asserting that Richard continued to be an employee of Abt, and was therefore owed benefits. Abt replied that Richard was terminated in 1975, and was not entitled to any benefits from Abt.

On October 12, 2005, Richard passed away. Cecelia brought suit on November 27, 2007, claiming breach of contract on the three benefit plans, and seeking damages for life insurance benefits allegedly payable upon Richard's death, thirty-one years of health insurance premiums and other medical expenses that the Frushers incurred due to the allegedly wrongful ter-

mination of health insurance by Abt, and pension benefits that accrued from 1974 to 2005, the time during which Plaintiffs claim Richard was disabled but still employed by Abt.

## II. Standard of Review

When evaluating a summary judgment motion, the Court views the record in the light most favorable to the nonmovant, making all reasonable inferences in that party's favor. *See Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir.2006); *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The threshold inquiry is whether a genuine issue of material fact exists, material facts being "those that 'possess the capacity to sway the outcome of the litigation under the applicable law.'" *See DePoutot v. Raffaelly,* 424 F.3d 112, 117 (1st Cir.2005) (quoting *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997)). Once this threshold is passed, the moving party must show that, given the undisputed facts, it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. As Plaintiffs bear the burden of production at trial on the breach of contract claims, Defendant may be entitled to summary judgment in one of two ways: (1) by negating an essential element of Plaintiffs' case through submission of affirmative evidence; or (2) by demonstrating that the evidence is insufficient to establish an essential element of Plaintiffs' claim. *See Celotex,* 477 U.S. at 331, 106 S.Ct. 2548.

## III. Summary Judgment Record

■ In the present case, the question of whether any material facts are in dispute is resolved by the Plaintiffs' failure to object to the Defendant's request for admissions under Fed.R.Civ.P. 36 and their failure to dispute the Defendant's statement of undisputed facts under Local Rule 56(a). *See* Fed.R.Civ.P. 36; DRI LR Cv 56(a). Under Rule 36, all matters in a request for admissions are admitted unless specifically denied by the opposing party. Fed. R.Civ.P. 36(a)(3); *Talley v. United States,* 990 F.2d 695, 697 (1st Cir.1993). Local Rule 56(a)(3) states that "[f]or purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion."[1] LR Cv 56(a)(3). Because Plaintiffs neglected to deny the facts contained in the request for admissions and neglected to properly challenge the moving party's statement of undisputed facts, those facts are deemed admitted in accordance with Fed.R.Civ.P. 36(a) and Local Rule 56(a). *See CMI Capital Mkt. Inv., LLC v. Gonzalez–Toro,* 520 F.3d 58, 61 (1st Cir. 2008); *Talley,* 990 F.2d at 697. Therefore, the Court adopts the facts as set out in the Statement of Undisputed Facts together with the admitted facts. *See CMI,* 520 F.3d at 61.

## IV. Discussion

Defendant offers three arguments in support of its motion, any of which, if successful, would require summary judgment. The Court addresses each in turn.

---

**1.** Local Rule 56(a) requires that any such denial or objection to the movant's Statement of Undisputed Facts be in the form of a Statement of Disputed Facts, filed with the court and specifically identifying the evidence establishing the dispute, in reference to and in the same format as movant's Statement of Undisputed Facts. Plaintiffs tried to introduce evidence at oral argument to refute or otherwise argue around the Statement of Undisputed Facts, but because the Statement was already admitted, these efforts were in vain.

## A. ERISA Preemption

Defendant's primary challenge is that Plaintiffs' claims are preempted under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. 1001 *et seq.,* specifically § 1144(a), the so-called "preemption clause."

■ ERISA was enacted by Congress in 1974 as a uniform, comprehensive regulatory scheme for employee pension and welfare plans. *See Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). It is well settled that in designing ERISA, Congress "intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 794 (1st Cir.1995) (internal citation omitted). Therefore, claims for employee benefits brought pursuant to state law will generally fall within this broad field of preemption, and must be dismissed or defeated at summary judgment. *See Metro. Life,* 471 U.S. at 732–33, 105 S.Ct. 2380; *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 7 (1st Cir.1999).

■ Determining whether ERISA preempts Plaintiffs' state law breach of contract claims requires a two-step analysis. First, the benefit plans on which Plaintiffs sue must be employee benefit plans within the scope of ERISA. *See Hampers v. W.R. Grace & Co.,* 202 F.3d 44, 49 (1st Cir.2000) (citations omitted). Second, each cause of action must "relate[ ] to" the relevant employee benefit plan. *Id.* ERISA preempts state law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the claims. *Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 281 (1st Cir.2000).

ERISA governs all employee benefit plans which provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, [or] death." 29 U.S.C. § 1002(1); *see* 29 U.S.C. § 1003; *Metro. Life,* 471 U.S. at 732, 105 S.Ct. 2380. ERISA further governs all "employee pension benefit plan[s]" providing "retirement income to employees." 29 U.S.C. § 1002; *see* 29 U.S.C. § 1003.

■ The determination of whether an ERISA plan exists is a "question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Wickman v. Nw. Nat'l Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.1990) (internal quotation marks and citation omitted). In this case, there is no way for a reasonable trier of fact to find other than that all three plans in question fall under ERISA. The health insurance benefits provide for "medical, surgical, or hospital care," the life insurance benefits provide benefits "in the event of . . . death," and the pension benefits provide "retirement income to employees." *See* 29 U.S.C. §§ 1002, 1003; (Mar Aff. Exs. G and H). All three plans are governed by ERISA, in satisfaction of the first part of the preemption test.

■ The second step considers "whether the cause of action 'relates to' [an ERISA] employment benefit plan." *McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir.1998); *see Carlo,* 49 F.3d at 794 (holding that plaintiff's claims are preempted because the claims have "a connection with or reference to" ERISA plans). More concretely, a state law cause of action is expressly preempted where a plaintiff, to prevail, must prove the existence of, or specific terms of, an ERISA plan. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Vartanian v. Mon-*

*santo Co.*, 14 F.3d 697, 700 (1st Cir.1994). Plaintiffs assert three contract claims that all stem from Defendant's three ERISA plans for life insurance, health insurance and pension benefits. In order to prevail, it is elementary that Plaintiffs would have to "prove the existence" of the plans on which they are suing. *See McMahon*, 162 F.3d at 38. Thus, Plaintiffs' causes of action "relate to" ERISA-governed plans, and are expressly preempted. *See Vartanian*, 14 F.3d at 700.

Plaintiffs offer no defense to Abt's assertion of ERISA preemption as to the pension benefits. As a defense to Abt's assertion of preemption as to the health and life insurance benefits, Plaintiffs cite R.I. Gen. Laws § 27–38.2–1.[2] Plaintiffs provide no argument in conjunction with the citation to this statute and the Court declines to speculate on how a state statute on mental illness coverage could remove Plaintiffs' health and life insurance claims from the umbrella of ERISA preemption, whether through 29 U.S.C. § 1144(b) or otherwise, other than to say that it cannot.

### B. Statute of Limitations

Even if the Court were to grant Plaintiffs' leave to amend and refile the proper ERISA claims, the statute of limitations would still bar relief.

**2.** The statute, entitled, "Mental illness coverage," provides:

> Every health care insurer that delivers or issues for delivery or renews in this state a contract, plan, or policy except contracts providing supplemental coverage to Medicare or other governmental programs, shall provide coverage for the medical treatment of mental illness and substance abuse under the same terms and conditions as that coverage is provided for other illnesses and diseases. Insurance coverage offered pursuant to this statute must include the same durational limits, amount limits, deductibles and co-insurance factors for mental illness as for other illnesses and diseases. R.I. Gen. Laws § 27–38.2–1 (2008).

### 1. 10–year Statute of Limitations

 ERISA provides no specific statute of limitations, and so courts "apply the most closely analogous statute of limitations under state law."[3] *Trs. of the Local Union No. 17 Sheet Metal Workers' Apprenticeship Fund v. May Eng'g Co.*, 951 F.Supp. 346, 348 (D.R.I.1997) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)); *see* 29 U.S.C. § 1132. The applicable statute of limitations in this case is the so-called "default" statute of limitations for civil actions, R.I. Gen. Laws § 9–1–13(a).[4] *See Local Union No. 17*, 951 F.Supp. at 348 (applying the "resemblance test" and holding that R.I. Gen. Laws § 9–1–13(a) was the appropriate statute of limitations for actions to recover delinquent employer contributions under ERISA).

 Applying this 10–year statute of limitations here poses obvious problems for Plaintiffs. In the most simple analysis, Plaintiffs' causes of action accrued on November 1, 1975, when Richard's health and life insurance benefits were terminated. Under such a scenario, the statute would have expired on November 1, 1985. While one could argue for later accrual dates (for instance, Abt's informing Cecelia in January 1976 of her need to find new health

**3.** Arguably, the Court ought to look to Massachusetts law for an analogous statute of limitations for ERISA claims, as the plans were executed there. *See DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 483–84 (R.I.2004). However, the parties agree Rhode Island law applies for purposes of the statute of limitations, and the Court "can-and ordinarily should-accept such a concession." *Moores v. Greenberg*, 834 F.2d 1105, 1107 n. 2 (1st Cir. 1987) (citation omitted).

**4.** "Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." R.I. Gen. Laws § 9–1–13(a).

insurance), the most generous reading of the facts would be that the Frushers were still pursuing the requisite administrative remedies under ERISA as recently as Abt's response to Richard's second attorney's letter to Abt in November 1996. *See, e.g., Madera v. Marsh USA, Inc.*, 426 F.3d 56, 61 (1st Cir.2005) (holding that "[b]efore a plaintiff asserts an ERISA claim, however, he first must exhaust his administrative remedies"). Under this approach, Plaintiffs would have had until November 2006 to file suit. However, suit was not brought until November 2007, and so is untimely unless Plaintiffs can show that the statute was tolled.

### 2. "Unsound mind" Tolling Argument

 Plaintiffs argue that the statute of limitations should be tolled on account of Richard's "unsound mind." *See* R.I. Gen. Laws § 9–1–19.[5] If Richard were found to have had an unsound mind, as Plaintiffs argue, from 1975 until at least November 27, 1997, then the statute would be tolled and the action would be timely. *See id.* Plaintiffs cite *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289 (R.I.2002) as a case where the statute was tolled due to "unsound mind." *Johnson*, following *Roe v. Gelineau*, 794 A.2d 476 (R.I.2002), defined unsound mind as "the inability to manage one's day-to-day affairs." 799 A.2d at 293 (quoting 794 A.2d at 486–87). Thus, to overcome the statute of limitations bar, Plaintiffs would have to produce evidence at trial to show Richard was unable to manage his day to day affairs until at least November 27, 1997. In support of their claim, Plaintiffs produced two psychiatrists' case reports from 1980 that could be read to demonstrate Richard was suffering from mental illness.[6] However, these reports only deal with Richard's behavior and health before 1980, and thus do not establish Richard's inability to manage his day to day affairs in the years 1980–1997. This absence of a showing of unsound mind, coupled with the evidence Defendant offered that Richard voted, lived on his own, drove a car, hired an attorney, and otherwise managed his day to day affairs during that period, leads this Court to determine that a reasonable jury could not conclude Richard had an "unsound mind" during the relevant period. *Cf. Gelineau*, 794 A.2d at 486–87. Therefore, Abt is entitled to summary judgment because Plaintiffs' claims are time-barred.

### C. The Merits

Plaintiffs' claims, in addition to being preempted and untimely, also lack merit under a simple analysis of the benefit plans. While perhaps not required, the Court will briefly address the merits of the claims.

 Plaintiffs' first claim asserts that Defendant breached its contract with respect to life insurance benefits, and seeks relief of a one-time payout. However, the plan clearly states that life insurance benefits cease thirty-one days after termination unless the employee elects during that period to change to an individual policy. (*See* Mar Aff. Ex. G) The record shows that the termination of these benefits was done in accordance with the language of the plan. So, no reasonable fact finder could conclude that the contract was breached.

---

**5.** R.I. Gen. Laws § 9–1–19 provides that the statute of limitations will not run against a person of "unsound mind" until that impediment is removed. In Richard's case, Plaintiffs argue that the impediment was only removed upon his October 2005 death.

**6.** Abt argued that the reports should be excluded as hearsay. However, "[s]tatements in a document in existence twenty years or more the authenticity of which is established" are exempted from exclusion on hearsay grounds. Fed.R.Evid. 803(16).

Plaintiffs' second claim asserts that Defendant breached its contract with respect to health insurance. The terms of that plan were identical to those for life insurance, and again, the record reflects that the benefits were terminated in accordance with the plan. *See id.*

 Plaintiffs' third and final claim asserts that Defendant breached its contract by refusing to make contributions to Richard's pension plan for the 31 years of Richard's alleged disability (1974–2005). Abt's pension plan provides that if an employee has under three years of service, that employee shall not receive a pension. (Mar Aff. Ex. H) Because Richard worked for less than three years (2 years, 9 months, 14 days), there is no question that he was not eligible to receive any pension benefits.

Plaintiffs argue that because Richard was never notified of his termination it was never effective, and therefore he continued to be an employee of Abt until his death. This argument is factually incorrect and without legal support.

V. Conclusion

For the reasons set forth above, summary judgment is granted in favor of Abt on all counts.

IT IS SO ORDERED.